## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| GREGORY AHARONIAN<br>440 Davis Court<br>San Francisco, CA 94111,<br><br>DAVID LENTINI<br>1932 California Street<br>San Francisco, CA 94109,<br><br>DAVID PRESSMAN<br>1070 Green Street<br>San Francisco, CA 94133,<br><br>and<br><br>STEVE MORSA<br>223 Thousand Oaks Blvd.,<br>Thousand Oaks, CA 91360,<br><br>               Plaintiffs,<br><br>               v.<br><br>CARLOS GUTIERREZ,<br>SECRETARY OF COMMERCE,<br>U.S. Department of Commerce<br>1401 Constitution Ave., NW<br>Washington, D.C. 20230<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>   Civil Action No: 1:07-cv-01224 (JR)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

### DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    I.      LEGISLATIVE AND STATUTORY BACKGROUND ...................................... 3

    II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................ 8

DISCUSSION ........................................................................................................ 11

    I.      SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS ............................ 13

    II.     SECTION 3(b) DOES NOT PROVIDE A PRIVATE RIGHT OR A PRIVATE
          RIGHT OF ACTION ...................................................................................... 14

    III.    PLAINTIFFS' APA CLAIM IS NOT REVIEWABLE BY
          THE COURT ................................................................................................. 21

          A.     Section 3(b) Provides No Judicially Manageable Standards
                Of Review ............................................................................................ 21

          B.     The Civil Service Reform Act Of 1978 Precludes APA Review ............ 28

    IV.    PLAINTIFFS LACK STANDING TO CHALLENGE THE
          SECRETARY'S APPOINTMENT OF THE DEPUTY DIRECTOR ................ 31

          A.     Plaintiffs Lack Article III Standing ........................................................ 31

                1.     Plaintiffs Have Not Alleged An Adequate Injury
                      in Fact .......................................................................................... 32

                2.     Plaintiffs Do Not Allege Injuries Fairly Traceable
                      To The Appointment of the Deputy Director .............................. 36

                3.     Plaintiffs Have Not Met And Cannot Meet The
                      Requirement Of Showing Redressability .................................... 38

          B.     Plaintiffs Lack Prudential Standing ....................................................... 49

    CONCLUSION ...................................................................................................... 41

# TABLE OF AUTHORITIES

**CASES**                                                                                    Page(s)

Alexander v. Sandoval,
    532 U.S. 275 (2001) ........................................................................... 15, 16, 20

Allen v. Wright,
    468 U.S. 737 (1984) ........................................................................... 36

Am. Fed. of Gov't Employees, AFL-CIO v. Rumsfeld,
    321 F.3d 139 (D.C. Cir. 2003) ................................................................ passim

Assassination Archives and Research Ctr. v. Dep't of Justice,
    43 F.3d 1542 (D.C. Cir. 1995) ............................................................... 15

Babbitt v. United Farm Workers Nat'l Union,
    442 U.S. 289 ..................................................................................... 35, 36

Baker v. Carr,
    369 U.S. 186 (1962) ........................................................................... 32

Baltimore Gas & Electric Co. v. FERC,
    252 F.3d 456 (D.C. Cir. 2001) ............................................................... 14

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ........................................................................ 12, 14

Bennett v. Spear,
    520 U.S. 154 (1997) ........................................................................... 39

Blancett v. United States Bureau of Land Mgmt.,
    No. 04-2152, 2006 WL 696050 (D.D.C. March 20, 2006) ...................................... 12, 34

Block v. Community Nutrition Inst.,
    467 U.S. 340 (1984) ........................................................................... 224

Buaiz v. United States,
    471 F. Supp. 2d 129 (D.D.C. 2007) ......................................................... 13

Califano v. Sanders,
    430 U.S. 99 (1977) ............................................................................. 20

Cappadora v. Celebrezze,
        356 F.2d 1 (2d Cir. 1966) ............................................................. 24

Carducci v. Regan,
        714 F.2d 171 (D.C. Cir. 1983) ...................................................... 31

Carlin v. McKean,
        823 F.2d 620 (D.C. Cir. 1987) ................................................ 22, 25

Cf. United States v. Wells,
        519 U.S. 482 (1997) ...................................................................... 26

Citizens to Preserve Overton Park, Inc. v. Volpe,
        401 U.S. 402 (1971) ...................................................................... 20

Clarke v. Sec. Indus. Ass'n,
        479 U.S. 388 (1987) ...................................................................... 39

Committee for Monetary Reform v. Board of Governors of the Federal Reserve System
        766 F. 2d 538 (D.C. Cir. 1985) ..................................................... 38

Cort v. Ash,
        422 U.S. 66 (1975) ................................................................... 15, 17

Ctr. for Law and Educ. v. Dep't of Educ.,
        396 F.3d 1152 (D.C. Cir. 2005) ..................................................... 35

Dep't of the Army v. Fed. Labor Relations Auth.,
        56 F.3d 273 (D.C. Cir. 1995) ........................................................ 13

Doe v. Goss,
        No. 04-2122, 2007 WL 106523 (D.D.C. Jan. 12, 2007) ................ 29

EEOC v. St. Francis Xavier Parochial Sch.,
        117 F.3d 621 (D.C. Cir. 1997) ...................................................... 12

FDIC v. Meyer,
        510 U.S. 471 (1994) ...................................................................... 14

Fair Empl. Council of Greater Washington, Inc. v. BMC Mktg. Corp.,
        28 F.3d 1268 (D.C. Cir. 1994) ...................................................... 33

Fed. for Am. Immigration Reform, Inc. v. Reno,
      93 F.3d 897 (D.C. Cir. 1996) ........................................................... 38

Flast v. Cohen,
      392 U.S. 83 (1968) ......................................................................... 32

Free Enterprise Fund,
      2007 WL 891675 ............................................................................. 39

Gen-Probe, Inc. v. Ctr. for Neurologic Study,
      853 F. Supp. 1215 (S.D. Cal. 1993) (same for § 202) ............................ 19, 21

Gonzaga Univ. v. Doe,
      536 U.S. 273 (2002) ........................................................................ 20

Graham v. Ashcroft,
      358 F.3d 931 (D.C. Cir. 2004) ........................................................ 30, 31

Hammond v. Comptroller of the Currency,
      878 F. Supp. 1438 (D. Kan. 1995) ................................................ 22, 23, 24

Heckler v. Chaney,
      470 U.S. 821 (1985) ............................................................ 14, 21, 22, 27

In re Hennen,
      38 U.S. (13 pet.) 230 (1839) ........................................................... 25

Herbert v. Nat'l Acad. of Sci., ,
      974 F.2d 192 (D.C. Cir. 1992) ........................................................ 17

Jaffee v. United States,
      592 F.2d 712 (3d Cir. 1979) ........................................................... 13

Kalil v. Johanns,
      407 F. Supp. 2d 94 (D.D.C. 2005) .................................................... 29

Kowal v. MCI Commun. Corp.,
      16 F.3d 1271 (D.C. Cir. 1994) ..................................................... 12, 35

Landry v. FDIC,
      204 F.3d 1125 (D.C. Cir. 2000) ...................................................... 36

Lujan v. Defenders of Wildlife,
      504 U.S. 555 (1992) ................................................................... 32, 36

Made in the USA Found. v. Gen. Motors Corp.,
 2005 WL 3676030 (D.D.C. March 31, 2005) .............................................. 11

Madey v. Duke Univ.,
 413 F. Supp. 2d 601 (M.D.N.C. 2006) ....................................................... 19

Malone v. Bowdoin,
 369 U.S. 643 (1962) ................................................................................ 13

Mudd v. White,
 309 F.3d 819 (D.C. Cir. 2002) .................................................................. 20

Nat'l Federal of Fed. Employees v. United States,
 905 F.2d 400 (D.C. Cir. 1990) .............................................................. 22, 23

Nat'l Treasury Employees' Union v. Campbell,
 654 F.2d 784 (D.C. Cir. 1981) .................................................................. 16

Nat'l Treasury Employees' Union v. United States,
 101 F.3d 1423 (D.C. Cir. 1996) ............................................................. 32, 35

Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,
 366 F.3d 930 (D.C. Cir. 2004) .................................................................. 36

Newport Aeronautical Sales v. Dep't of Air Force,
 Civ. No. 04-1283, 2007 WL 2007966 (D.D.C. July 11, 2007) ....................................... 15

Norton v. Southern Utah Wilderness Alliance,
 542 U.S. 55 (2004) ................................................................................. 39

Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods,
 886 F.2d 419 (D.C. Cir. 1989) .................................................................. 26

Raduga USA Corp. v. U.S. Dep't of State,
 440 F. Supp. 2d 1140 (S.D. Cal. 2005) ........................................................ 35

Reuss v. Balles,
 584 F.2d 461 (D.C. Cir. 1978) ........................................................... 33, 37, 38

Sagoma Plastics, Inc. v. Gelardi,
 366 F. Supp. 2d 185 (D. Me. 2005) ............................................................ 19

Sierra Club v. Morton,
 405 U.S. 727 (1972) ................................................................................ 33

Spagnola v. Mathis,
     859 F.2d 223 (D.C. Cir. 1988) ................................................................ 28

Steadman v. Governor, U.S. Soldiers' and Airmen's Home,
     918 F.2d 963 (D.C. Cir. 1990) ................................................................ 28

Steel Co. v. Citizens for a Better Env't,
     523 U.S. 83 (1998) ..................................................................... 31, 32

Steenholdt v. FAA,
     314 F.3d 633 (D.C. Cir. 2003) ................................................................ 23

Stewart v. Nat'l Educ. Ass'n,
     404 F. Supp. 2d 122 (D.D.C. 2005) ........................................................... 8

Swan v. Clinton,
     100 F.3d 973 (D.C. Cir. 1996) ................................................................ 13

Touche Ross & Co v. Redington,
     442 U.S. 560 (1979) ..................................................................... 18, 20

Tri-State Hosp. Supply Corp. v. United States,
     341 F.3d 571 (D.C. Cir. 2003) ................................................................ 13

United States v. Fausto,
     484 U.S. 439 (1988) ........................................................................ 28

United States v. Mitchell,
     463 U.S. 206 (1983) ........................................................................ 13

United States v. Sherwood,
     312 U.S. 584 (1941) ........................................................................ 13

United Transp. Union v. I.C.C.,
     891 F.2d 908 (D.C. Cir.1998) ................................................................ 35

Universities Research Ass'n, Inc. v. Coutu,
     450 U.S. 754 (1981) ..................................................................... 16, 17

Vermont Agency of Natural Res. v. United States ex rel. Stevens,
     529 U.S. 765 (2000) ........................................................................ 38

Warth v. Seldin,
     422 U.S. 490 (1975) ................................................................. 27, 32, 33

Webster v. Doe,
    486 U.S. 592 (1988) ........................................................................................ 22, 26


**STATUTES AND REGULATIONS**

5 U.S.C. § 552 ................................................................................................................ 14

5 U.S.C. § 701, et seq .............................................................................................. 10, 21

5 U.S.C. § 701(a)(2) ................................................................................................. 13, 14

5 U.S.C. § 702 .............................................................................................................. 13

5 U.S.C. § 706 ......................................................................................................... 14, 41

5 U.S.C. § 1206 ............................................................................................................ 30

5 U.S.C. § 2104 ............................................................................................................ 29

5 U.S.C. § 2105 ............................................................................................................ 29

5 U.S.C. § 2301(b)(1) (emphasis added) ...................................................................... 29

5 U.S.C. § 2302(a)(2) .......................................................................................... 3, 28, 29

5 U.S.C. § 3301 ............................................................................................................ 20

5 U.S.C. § 3302 ............................................................................................................ 20

15 U.S.C. § 790(a)(2) ................................................................................................... 27

28 U.S.C. § 1331 .......................................................................................................... 13

28 U.S.C. § 1361 .......................................................................................................... 13

28 U.S.C. § 1498 .......................................................................................................... 13

35 U.S.C. 1, et seq ................................................................................................... 1, 4, 5

35 U.S.C. § 3 ......................................................................................................... passim

35 U.S.C. § 6(a) ............................................................................................................ 29

35 U.S.C. § 41 ................................................................................................. 33

35 U.S.C. § 116 ............................................................................................... 20

35 U.S.C. § 134(c) ........................................................................................... 31

35 U.S.C. § 141 ......................................................................................... 19, 34

35 U.S.C. § 145 .................................................................................... 19, 20, 34

35 U.S.C. § 154(d)(1) ...................................................................................... 35

35 U.S.C. §202 ................................................................................................ 20

35 U.S.C. § 281 ............................................................................................... 19

39 U.S.C. §202(c) ........................................................................................... 24

42 U.S.C. § 16391(b) ...................................................................................... 27

42 U.S.C. § 16537(c) ....................................................................................... 27

42 U.S.C. § 16538(d)(2) .................................................................................. 27

42 U.S.C. § 7135 ............................................................................................. 27

42 U.S.C. § 7381a(b)(2) .................................................................................. 27

37 C.F.R. § 1.16, <u>et seq</u> ...................................................................................... 33

49 U.S.C. §44702(d)(2) ................................................................................... 24

50 U.S.C. § 403-3e(b) ..................................................................................... 27

Pub. L. 106-113, Title IV, sec. 4711 .......................................................... 1, 3, 4

Pub. L. No. 95-454, 92 Stat. 1111 ............................................................... 3, 29

## <u>RULE</u>

Fed. R. Civ. P. 12 .................................................................................. 12, 15, 33

**LEGISLATIVE MATERIALS**

H.R. Conf. Rep. No. 106-287, at 1 (Aug. 3, 1999) ........................................................ 4

H.R. Conf. Rep. No. 106-287, at ........................................................................... 5, 18

H.R. Conf. Rep. No. 106-287, at Title VI .......................................................... 7, 8, 31

H.R. Conf. Rep. No. 106-287 at Sec. 613 ............................................................ 19, 20

S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945) ..................................................... 22

S. Rep. No. 969, 95th Cong., 2d Sess. 3 (1978) ........................................................ 30

143 Cong. Rec. H1643-01 (Apr. 17, 1997)   5

145 Cong. Rec. E1752 (Aug. 5, 1999) .......................................................................... 20

145 Cong. Rec. E1756 (Aug. 5, 1999) .......................................................................... 20

145 Cong. Rec.  E1788, Sec. 613 (Aug. 5, 1999) ................................................... 7, 20

`

## INTRODUCTION

Plaintiffs seek to convert federal courts into their own Human Resource Departments, available to lodge complaints about the qualifications of senior management personnel at federal agencies. Apparently displeased with the policies and practices of the United States Patent and Trademark Office ("USPTO"), but unable to directly contest such policies, plaintiffs attempt to attack those policies collaterally by contesting instead the qualifications of the Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office ("Deputy Director").[1] Plaintiffs level sweeping assaults on the efficiency and efficacy of the USPTO, contending that the Patent Office has suffered serious deterioration in the quality of issued patents and trademarks and that the examiners and employees of the USPTO suffer from a lack of morale. Plaintiffs lay blame for the USPTO's problems, alleged to date back before 2005, on the Secretary's appointment of Ms. Margaret Peterlin as Deputy Director in April 2007. Because plaintiffs' claims are not justiciable, plaintiffs' complaint should be dismissed.

Congress passed the "Consolidated Appropriations Bill of 2000 " ("Act") amending sections of Title 35 of the United States Code relating to patent laws. Pub. L. 106-113, 113 Stat. 1536 (Nov. 29, 1999), codified at 35 U.S.C. 1, et seq. Included among the changes was a provision altering the organizational structure of the USPTO and providing for a Presidentially-appointed Director to run the USPTO; a Deputy Director appointed by the Secretary to act in the Director's stead in his absence; and a Commissioner of Patents and Commissioner of

---

[1] In their Complaint, plaintiffs repeatedly refer to Ms. Peterlin incorrectly as the "Under Secretary;" she is, of course, the Deputy Under Secretary.

Trademarks, both appointed by the Secretary to act as chief operating officers for the USPTO.

35 U.S.C. § 3.  Plaintiffs rely for their claims on language in the Act describing the Deputy

Director, like the Director, as a "citizen of the United States who has a professional background

and experience in patent or trademark law."  Id. § 3(b).

Plaintiffs' action suffers from several jurisdictional flaws and, as is explained below,

must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Significantly, plaintiffs bring their claims under § 3(b), a statute that does not provide them with

a private right of action enforceable in federal court.  Section 3(b) simply describes the Deputy

Director as a "citizen of the United States who has a professional background and experience in

patent or trademark law."  35 U.S.C. § 3(b).  It does not explicitly provide a private right of

action, and both the language and the structure of the statute make clear that one was not

intended by Congress.  To permit third-parties to second guess the Secretary's policy judgment

about his staffing needs would, indeed, run counter to Congress's avowed purpose in the Act to

reduce micro-management of the USPTO's operations.

Under the Administrative Procedure Act, the Secretary's appointment of the Deputy

Director is action "committed to the agency's discretion by law" and therefore not justiciable in

this court.  First, section 3(b) is drawn so broadly and vaguely that a court would have no

meaningful standard against which to judge the Secretary's exercise of his discretion.  As this

court has held in similar circumstances, it is not for courts to determine what constitutes the type

of experience a Secretary deems important for the operation of the USPTO, but for the Secretary

himself as informed by the Director's nomination.  Second, the Civil Service Reform Act of

1978, Pub. L. No. 95-454, 92 Stat. 1111, as amended, codified throughout 5 U.S.C. ("CSRA"),

regulates federal personnel practices and personnel actions like employment decisions and

appointments.  5 U.S.C. § 2302(a)(2).  As the Supreme Court and this Circuit have held, the

CSRA precludes challenges to actions falling within the CSRA scheme, even under the APA

Plaintiffs also lack standing to bring their claims.  In their complaint, plaintiffs fail to

claim any cognizable injury arising from the appointment of the Deputy Director.  And even if

the complaint had claimed an injury, plaintiffs would still lack standing because they fail to

establish that their claimed injuries are traceable to the Deputy Director's appointment or

redressable by any of their requested relief.  Plaintiffs' failure to allege Article III standing is

underscored by plaintiffs' failure to establish prudential standing as well:  they have not and

cannot establish that they fall within the "zone of interests" Congress identified in passing the

Act.

## **BACKGROUND**

## I.    **LEGISLATIVE AND STATUTORY BACKGROUND**

On November 29, 1999, Congress passed, and the President enacted, the "Consolidated

Appropriations Bill of 2000 " ("Act") amending sections of Title 35 of the United States Code

with the goal of "provid[ing] enhanced protection for inventors and innovators, protect[ing]

patent terms, [and] reduc[ing] patent litigation."  H.R. Conf. Rep. No. 106-287, at 1 (Aug. 3,

1999) (discussing provisions of Consolidated Appropriations Bill of 2000 relating to the

American Inventors Protection Act of 1999, Pub. L. 106-113, 113 Stat. 1536 (Nov. 29, 1999)).

Congress saw the Act as an answer to some perceived problems with the patent system,

including the "key problem . . . that the [Patent and Trademark Office ("PTO")] is unable to run

at peak efficiency due to excessive regulation."  Id. at Purpose and Summary.  Accordingly, after

years of proposed bills and legislation, Congress amended the patent laws in 1999 to provide for,

among other things, significant reforms to the process for publishing patents and a "first inventor

defense" to clarify the interference between patent and trade secret laws.[2]

Title VI of the Act, entitled the "Patent and Trademark Office Efficiency Act,"

establishes the USPTO as an independent agency within the Department of Commerce, rather

than continuing as an office within the Department.  Pub. L. 106-113, Title IV, sec. 4711,

codified at 35 U.S.C. § 1 (1999).  Congress created the agency with the expectation that the

USPTO would "exercise more control regarding its operations and administration, . . . without

micro-management by Department of Commerce officials."  H.R. Conf. Rep. No. 106-287, at

"Description of Bill's Major Provisions" and Title VI Patent and Trademark Office.  Indeed,

Congress sought to separate "completely, policy functions from operational functions.  Policy

functions are left to the Department of Commerce, giving patent and trademark policy a

necessary representative at the President's table, while management and operational functions,

day to day, . . . are vested completely in the PTO."  See 143 Cong. Rec. H1643-01 (Apr. 17,

1997) (statements by Congressman Coble in support of predecessor bill).  Consistent with that

purpose, the Act provides that the "United States Patent and Trademark Office shall be subject to

the policy direction of the Secretary of Commerce, but otherwise shall retain responsibility for

decisions regarding management and administration of its operations and shall exercise

---

[2]  Thus, contrary to plaintiffs' suggestion, the Act was not passed simply to change the
qualifications described of USPTO officers and employees, but was rather a comprehensive
amendment to the patent laws in Title 35.  (See Compl. ¶ 2.)

independent control of its . . . personnel decisions and processes, . . . and other administrative and management functions[.]"  35 U.S.C. § 1(a).

The Patent and Trademark Office Efficiency Act vests the USPTO, "subject to the policy direction of the Secretary of Commerce," with responsibility for granting and issuing patents and registering trademarks, as well as disseminating information about patents and trademarks to the public.  Id. § 2(a).  Specifically, the USPTO is authorized, among other things, to establish regulations to facilitate and expedite the processing of patent applications; advise the President, through the Secretary of Commerce, on national and international intellectual property policy issues; and advise Federal departments and agencies on intellectual property policy in the United States and abroad.  See id. § 2(b)(1) – § 2(b)(13).  The Act also amends the prior structure of USPTO's management, replacing the Commissioner of Patents and Trademarks, Deputy Commissioner, two Assistant Commissioners and examiners-in-chief with an Under Secretary of Commerce for Intellectual Property and Director of the United States USPTO ("Director), Deputy Under Secretary of Commerce  for Intellectual Property and Deputy Director of the United States Patent and Trademark Office ("Deputy Director"), a Commissioner for Patents, and a Commissioner for Trademarks.  See id. §§ 3(a), (b).

The Director is tasked with providing policy direction and management supervision for the USPTO, issuing patents and registering trademarks, and consulting with the Patent Public Advisory Committee and Trademark Public Advisory Committee on matters relating to patents and trademarks.  35 U.S.C. § 3(a)(2).  The Director is also solely responsible for hiring and appointing all other "such officers, employees . . . and agents of the Office as the Director considers necessary to carry out functions of the Office" and to define those offices and duties as

she may determine.  Id. § 3(b)(3).  The Director "shall be a citizen of the United States, . . . be appointed by the President, by and with the advice and consent of the Senate, . . . [and] be a person who has a professional background and experience in patent or trademark law."  Id. § 3(a)(1).  As the Committee described, the "power and duties of the PTO" are "vested in the director."  H.R. Conf. Rep. No. 106-287, at Title VI Patent and Trademark Office, Sec. 613.  The Committee saw the Director's role as two-fold.  "As Under Secretary of Commerce of Intellectual Property, she serves as the policy advisor to the Secretary of Commerce on intellectual property issues.  As Director, she is responsible for the management and direction of the PTO."  Id.  The Director is removable from office by the President, with the requirement only that the President notify Congress of any removal decision.  35 U.S.C. § 3(a)(4).

The Act provides that the Director is assisted by the Deputy Director.  The Deputy Director is authorized to act in the capacity of the Director in the Director's absence or incapacitation.  35 U.S.C. § 3(b)(1).  The Deputy Director is appointed by the Secretary of Commerce upon nomination by the Director and "shall be a citizen of the United States" who, like the Director, "has a professional background and experience in patent or trademark law." Id.  The Committee Report and legislative history contain sparse reference to the newly-formed Deputy Director position, stating simply that the "Director [sic] shall appoint a Deputy Director to act in the capacity of the Director if the Director is absent or incapacitated."  "  H.R. Conf. Rep. No. 106-287, at Title VI Patent and Trademark Office, Sec. 613; see also 145 Cong. Rec. E1788, Sec. 613 (Aug. 5, 1999) (statement of Cong. Howard Coble) ("The Secretary of Commerce, upon nomination by the director, shall appoint a Deputy Director to act in the capacity of the Director if the Director is absent or incapacitated.").

-6-

The Commissioners are appointed by the Secretary of Commerce for five-year terms. 35 U.S.C. § 3(b)(2)(A). The Act describes that a Commissioner "shall be a citizen of the United States with demonstrated management ability and professional background and experience" in patent law and trademark law. Id. The Commissioners "serve as the chief operating officers for the operations of the Office relating to patents and trademarks, respectively, and shall be responsible for the management and direction of all aspects of the activities of the Office that affect the administration of patent and trademark operations, respectively." Id.

The USPTO is not subject to any other administrative or statutory limitations on positions or personnel under the Act. 35 U.S.C. § 3(b)(3). It is notable that the broad discretion afforded the Director to appoint officers and employees is circumscribed only by a requirement that the USPTO submit to Congress a proposal to provide an incentive program to retain patent and trademark examiners to provide training for other examiners, 35 U.S.C. § 3(b)(4), and that the Director maintain a program to identify national security positions and provide for appropriate clearances. Id. § 3(b)(5). Nonetheless, the Act expressly subjects the officers and employees of the office "to the provisions of title 5, United States Code, relating to Federal employees." Id. § 3(c); see also H.R. Conf. Rep. No. 106-287, at Title VI Patent and Trademark Office, Sec. 613 ("The PTO will be subject to all provisions of title 5 of the U.S. Code governing federal employees.").

The Act was the culmination of years of prior proposed bills suggesting changes to the entire patent system. Some proposals included making the USPTO a government corporation; others maintained the USPTO within the Department of Commerce under the daily management of the Secretary of Commerce. Those reorganization proposals, though varying, were consistent

in one regard:  any statutory requirement that an employee or officer be a person with "demonstrated experience in patent law and trademark law" was viewed as a broad, "minimal and vague" discretionary grant to the hiring officer, vesting in the hiring officer "alone" the authority to "consider what is necessary to carry out" the USPTO's functions.  H.R. Comm. Rep. No. H521-45, 243 (Sept. 14, 1995 and March 8, 1996) (statement of Timothy Reardon, congressional liaison, USPTO Society) (emphasis added).  Despite Congress's awareness of the "lack of checks and balances on the appointment of officers" provided through a broad standard that a person have "demonstrated experience in patent law and trademark law," id., Congress in 1999 passed the Act expecting merely that the Director and Deputy Director be citizens with "professional background and experience in patent or trademark law," and that the Commissioners possess "demonstrated management ability and professional background and experience" in patent law and trademark law.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2007, the USPTO announced that Secretary of Commerce Carlos M. Gutierrez had appointed Margaret J.A. Peterlin to serve as Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the Commerce Department's United States Patent and Trademark Office.  (Compl. ¶¶ 16, 39; see also Ex. 1[3] (referenced in Compl. ¶ 16, Press Release available at www.uspto.gov/web/offices/com/speeches/07-15.htm) (last visited

---

[3]  On motions to dismiss under Rule 12(b)(6), the court may consider all documents incorporated by reference into the complaint.  The exhibits attached here are referenced and incorporated by plaintiffs and provided herein solely for the convenience of the Court, and are considered to be part of the allegations of the complaint.  See, e.g., Stewart v. Nat'l Educ. Ass'n, 404 F. Supp. 2d 122, 129 (D.D.C. 2005).

Sept. 14, 2007), Ex. 2 (referenced in Compl. ¶ 39, Executive Biography of Margaret Peterlin

available at www.uspto.gov/biographies/bio_peterlin.htm) (last visited Sept. 14, 2007).)  Ms.

Peterlin was sworn in as Deputy Under Secretary and Deputy Director in April 2007, having

previously served as the Counsel for Legal Policy and National Security Advisor for the Speaker

of the House of Representatives, J. Dennis Hastert.  (Id.; Exs. 1, 2.)   In that role, Ms. Peterlin

advised the Speaker, House and Senate leadership and senior staff on legislative policy and

strategy, "including judiciary issues such as intellectual property protection and international

relations." (Id..)  Before counseling Congress on intellectual property issues as Counsel for

Legal Policy, Ms. Peterlin worked as the General Counsel to Richard Armey, Majority Leader of

the House , and clerked for the Honorable Judge Jerry E. Smith in the United States Court of

Appeals for the Fifth Circuit.  (Id.)  Ms. Peterlin graduated cum laude from the University of

Chicago School of Law and is a member of the New York state bar.

    The Director of the USPTO expressed confidence that Ms. Peterlin would serve well as

his Deputy Director.  In the announcement of her appointment, the Director stated that Ms.

Peterlin

> is a tremendous asset to the USPTO.  With an impressive track record of success across
> several disciplines, she has established herself as a proven leader, strategic legal thinker,
> and knowledgeable legislative tactician. [Ms. Peterlin] will apply these skills to USPTO's
> challenges, which she well understands from her time representing the leadership of the
> U.S. House of Representatives.

(Compl. ¶ 16, Ex. 1.)

    On July 9, 2007, plaintiffs filed suit, challenging the Secretary's appointment of

Ms. Peterlin as the Deputy Under Secretary and Deputy Director.  Plaintiffs bring two causes of

action directly under the statute, claiming that the Secretary violated the terms of 35 U.S.C.

§ 3(b)(1) when he appointed a Deputy Director allegedly without the requisite "professional background and experience in patent or trademark law." (Compl. ¶¶ 44, 46.)   Plaintiffs also bring a cause of action under the Administrative Procedure Act, 5 U.S.C. § 701, <u>et seq.</u> ("APA"), asserting that the Secretary's choice for Deputy Director was arbitrary, capricious and an abuse of discretion.  (<u>Id.</u> ¶ 45.)  Plaintiffs seek sweeping relief, demanding that the court hold that the Deputy Director is unqualified under 35 U.S.C. § 3 and that the Secretary violated the law by appointing Ms. Peterlin (<u>id.</u> at 14, ¶¶ 1, 2); order that the Secretary remove the Deputy Director from office and appoint a new Deputy Director fulfilling the alleged requirements of § 3 and comporting with the "letter and spirit of the law" (<u>id.</u> at 3 ¶ 3; 14 ¶¶ 3, 5; ); order that the Secretary promulgate rules defining what qualifies as a "professional background and experience in patent or trademark law" adequate under § 3 (<u>id.</u> at 14 ¶ 4); and award fees and costs.  (<u>Id.</u> at 14 ¶¶ 6,7.)

    Plaintiffs are patent lawyers, analysts and inventors.  Gregory Aharonian holds himself out as a "professional patent analyst" and inventor.  (Compl. ¶ 7.)  David Lentini claims to be an inventor and to have "prosecuted patent applications" before the USPTO.  (<u>Id.</u> ¶ 8.)  David Pressman asserts that he is a patent lawyer and former examiner for the USPTO, and registered to practice before the USPTO.  (<u>Id.</u> ¶ 9.)  Steve Morsa states that he is an inventor.  (<u>Id.</u> ¶ 10.)  Plaintiffs advance an encompassing "management incompetence" theory of injury, alleging that the Secretary's "illegal appointment of [the Deputy Director] perpetuates USPTO management's inability to handle egregious delays in processing patent applications and [to] halt the decline in the quality of issued patents, because of management's lack of professional experience."  (Compl. ¶ 13.)  Specifically, inventors Aharonian and Morsa complain that their

patent applications have been rejected (on some undefined occasions), forcing them to pay tens

of thousands of dollars to argue against the "spurious rejections," and delaying the time between

application and issuance of a patent.  (Compl. ¶ 13.)  Attorneys Lentini and Pressman similarly

express displeasure for alleged delays in processing patent applications, claiming the loss of fees

for their patent prosecution services.  (Compl. ¶ 13.)

## DISCUSSION

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to

dismiss a claim on the ground that the court lacks subject matter jurisdiction because the

plaintiffs lack standing, for example, or because the United States has not waived its sovereign

immunity.  In contrast to a motion to dismiss brought under Rule 12(b)(6), when a party moves

to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), a court may

consider the motion based on the complaint standing alone or, where necessary, on the complaint

"supplemented by undisputed facts evidenced in the record, or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts."  Herbert v. Nat'l Acad. of Sci.,

974 F.2d 192, 197 (D.C. Cir. 1992).  Upon motion, the plaintiff then bears the burden to prove

by a preponderance of the evidence that the court has jurisdiction to hear its claims.  See Made in

the USA Found. v. Gen. Motors Corp., 2005 WL 3676030, No. 4-0553, at *1 (D.D.C. March 31,

2005) (Robertson, J.).  Although a court must accept as true all the factual allegations contained

in the complaint when reviewing a motion to dismiss for lack of jurisdiction, "the court need not

accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in

the complaint.  Nor must the court accept legal conclusions cast in the form of factual

allegations." <u>Kowal v. MCI Commun. Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In the

court's analysis, plaintiffs' "factual allegations in the complaint . . . will bear closer scrutiny in

resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion." <u>Blancett v. United States</u>

<u>Bureau of Land Mgmt.</u>, No. 04-2152, 2006 WL 696050 (D.D.C. March 20, 2006) (internal

quotations and citations omitted).

     To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a

complaint must contain "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do. Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007)

(footnote omitted) (citations omitted). In evaluating the sufficiency of the complaint, the Court

considers only "the facts alleged in the complaint, any documents either attached to or

incorporated in the complaint and matters of which [the Court] may take judicial notice." <u>See</u>

<u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997). The rules of

pleading require factual allegations "plausibly suggesting," and "not merely consistent with," the

elements of a valid claim for relief, and plaintiffs must comply with the "threshold requirement

of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled

to relief.'" <u>See</u> <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1966.

     Because plaintiffs lack standing to confer this court with subject-matter jurisdiction over

their claims, because plaintiffs do not properly invoke this court's subject matter jurisdiction or

show that the United States waived its sovereign immunity, and because plaintiffs fail to state a

claim in all three of its causes of action, the entire action should be dismissed.

## I.    SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  A district court lacks jurisdiction over claims against the United States unless the United States' sovereign immunity has been explicitly waived.  See Dep't of the Army v. Fed. Labor Relations Auth., 56 F.3d 273, 275 (D.C. Cir. 1995) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Only Congress may waive the sovereign immunity of the United States, and Congress must "unequivocally express its desire to do so" on the face of a statute.  Id. at 277 (internal citations omitted); see also Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) ("[W]aiver of sovereign immunity must be unequivocally expressed in the statutory text and strictly construed, in terms of its scope, in favor of the sovereign.") (internal quotation marks and citation omitted).  The bar of sovereign immunity applies even when purely equitable relief is sought.  See, e.g., Jaffee v. United States, 592 F.2d 712, 717 n.10 (3d Cir. 1979) (citing Malone v. Bowdoin, 369 U.S. 643, 648 (1962)).

Plaintiffs invoke the court's jurisdiction under 28 U.S.C. §§ 1331 and 1361.  Neither effectively waives the United States' sovereign immunity.  See Buaiz v. United States, 471 F. Supp. 2d 129, 138 (D.D.C. 2007) (citing Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996) ("Neither the general federal question statute [28 U.S.C. § 1331] nor the mandamus statute [28 U.S.C. § 1361] by itself waives sovereign immunity.")).  Nor does 35 U.S.C. § 3, the underlying statute upon which plaintiffs rely, provide a waiver of sovereign immunity.[4]  Accordingly, the

_____

[4]  In limited circumstances not relevant here, the United States waived its sovereign immunity for suits brought under the patent laws set forth in Title 35.  See 28 U.S.C. § 1498 (waiving sovereign immunity for suits against the United States alleging, in limited circumstances, patent

-13-

Court lacks jurisdiction over plaintiffs' claims brought under §§ 1331 and 1361 and should

dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(1).

Although plaintiffs also assert a cause of action under the APA, citing 5 U.S.C. § 706, the

waiver of sovereign immunity provided in § 702 does not apply because plaintiffs have no

cognizable claim under the APA as described below, infra Part III.[5]  And even where a claim

against the government falls within an applicable waiver of sovereign immunity, a court must

determine whether "the source of substantive law upon which the claimant relies provides an

avenue for relief."  FDIC v. Meyer, 510 U.S. 471, 483-84 (1994).  The sources of substantive

law cited here, 35 U.S.C. § 3 and the APA, do not and the complaint should be dismissed.

## II.    SECTION 3(b) DOES NOT PROVIDE A PRIVATE RIGHT OR A PRIVATE RIGHT OF ACTION

Even if the United States had waived its sovereign immunity to plaintiffs' claims outlined

in their first and third causes of action, plaintiffs' claims still must be dismissed because 35

U.S.C. § 3, the only law under which they bring their claims in the first and third causes of

action, does not provide a private right or private right of action.  "[P]rivate rights of action to

enforce federal law must be created by Congress.  The judicial task is to interpret the statute

_____

infringement).  Plaintiffs do not claim any infringement of patents here.

[5]  The general waiver of sovereign immunity in the APA, 5 U.S.C. § 702, does not extend to
those federal agency actions or decisions that are "committed to agency discretion by law."  5
U.S.C. § 701(a)(2); Heckler v. Chaney, 470 U.S. 821, 832 (1985).  This ban on judicial review of
actions committed to agency discretion by law is jurisdictional.  See Baltimore Gas & Electric
Co. v. FERC, 252 F.3d 456, 458 (D.C. Cir. 2001).  Accordingly, dismissal of an action that falls
under 5 U.S.C. § 701(a)(2) is proper under Fed. R. Civ. P. 12(b)(1).  Accord id.

Plaintiffs also mistakenly cite 5 U.S.C. § 552 as a source for this court's jurisdiction.  That
statute governing Freedom of Information Act record requests is not at all relevant to plaintiffs'
claims.

-14-

Congress has passed to determine whether it displays an intent to create not just a private right

but also a private remedy.  Statutory intent on this latter point is determinative.  Without it, a

cause of action does not exist and courts may not create  one. . .”  Alexander v. Sandoval, 532

U.S. 275, 286-87 (2001) (internal citations omitted); see also Assassination Archives and

Research Ctr. v. Dep't of Justice, 43 F.3d 1542, 1544 (D.C. Cir. 1995) (“On this issue of

statutory construction, the ultimate issue is whether Congress intended to create a private right of

action.”) (internal quotation marks and citation omitted); Newport Aeronautical Sales v. Dep't of

Air Force, Civ. No. 04-1283, 2007 WL 2007966, *3-4 (D.D.C. July 11, 2007) (“The touchstone

for determining whether Section 130 creates an implied cause of action is Congressional

intent.”).  Thus, to determine whether causes of action exist, courts must examine the “text and

structure” of the statute at issue, neither of which support plaintiffs' claims here.  Sandoval, 532

U.S. at 288; see also Cort v. Ash, 422 U.S. 66, 78 (1975) (setting forth four-factors in

determining whether private rights of action exist, none of which support plaintiffs' claims

here).[6]

      The text of § 3(b) provides a statutory mechanism for ensuring the continuity of the

USPTO's functions in the absence or incapacitation of the Director.  Section 3 as a whole

---

[6] Prior to the Supreme Court's decision in Sandoval, when implied rights of action were more
commonly accepted, courts employed the four-factor test established in Cort v. Ash, 422 U.S.
66, 78 (1975), to determine whether a federal statute implied a private right of action.  The
factors set forth in Cort are: (1) is plaintiff a member of the class for whose “especial” benefit the
statute was passed; (2) is there any evidence of legislative intent, either explicit or implicit, to
create or deny a private remedy; (3) is it consistent with the legislative scheme to imply a private
remedy; and (4) is the cause of action one traditionally relegated to state law so that implying a
federal right of action would be inappropriate.  Therefore, even under the Cort test, there would
still not be a private right of action to enforce section 3b because there is no evidence of a
Congressional intent to provide such a remedy in either the language of the statute, or in its
legislative history.

generally sets forth the personnel structure for the USPTO:  the President appoints the Director, the Secretary of Commerce appoints the Deputy Director and the two Commissioners, and the Director appoints all other officers and employees and agents of the office.  35 U.S.C. §§ 3(a), 3(b).  Section 3(b)(1) specifically provides, in full, that the "Secretary of Commerce, upon nomination by the Director, shall appoint a [Deputy Director] who shall be vested with the authority to act in the capacity of the Director in the event of the absence or incapacity of the Director.  The Deputy Director shall be a citizen of the United States who has a professional background and experience in patent or trademark law."  Id. § 3(b)(1).  The statute is designed, at most, to delineate the relationship among the officers and employees of the USPTO, not the relationship between the government and third parties.

"Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."  Sandoval, 532 U.S. at 289 (internal quotation marks and citation omitted); see also Nat'l Treasury Employees' Union v. Campbell, 654 F.2d 784, 790 (D.C. Cir. 1981).  Indeed, the Supreme Court instructs that "there '[is]...far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation with 'an unmistakable focus on the benefitted class,' instead has framed the statute simply as a general prohibition or a command to a federal agency."  Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 772 (1981).  In Coutu, the Supreme Court examined Section 1 of the Davis-Bacon Act which requires that federal construction contracts meeting certain requirements "shall contain" a provision requiring contractors to pay wages "not less than those stated in the advertised specifications."  Id. at 771 (referring to the Davis-Bacon Act, 40 U.S.C. § 276a(a)).  The Court recognized that the language

-16-

in the Act benefits workers working under a federal construction contract but did not find that it reflected a Congressional intent to provide those workers with a private right of action for back wages in connection to those contracts.  Id. at 772.  The Court held that because the requirement was "phrased as a directive to federal agencies engaged in the disbursement of public funds, its language provides no support for the implication of a private remedy."  Id. at 772-73 (internal citation omitted).

Even weaker than the case under the Davis-Bacon Act, § 3(b) may give plaintiffs an incidental and generalized benefit, but provides no private right or private right of action.  In plaintiffs' case, it assures a USPTO structure so that the USPTO "exercise[s] more control regarding its operations and administration, . . . without micro-management by Department of Commerce officials."  H.R. Conf. Rep. No. 106-287, at "Description of Bill's Major Provisions" and Title VI Patent and Trademark Office Efficiency Act.  Perhaps, as general beneficiaries of Congressional legislation, plaintiffs may claim an incidental benefit from the streamlined structure of the USPTO.  But also like the Davis-Bacon Act's directive to federal agencies, the language of § 3(b) is not focused on plaintiffs at all.  Rather, the text is descriptive of the USPTO's structure only.  Such language does not indicate that Congress intended to create a right enforceable through private litigation.  See Coutu, 450 U.S. at 771; see also Made in the USA Foundation, 2005 WL 3676030 at *3 ("I do not find, nor does the plaintiff identify, any language in the Labeling Act that establishes a private right of action or a private remedy.  The Labeling Act's provisions are focused upon the regulated automobile manufacturers, and not on potential purchasers.").

The legislative history is entirely silent on the issue of a private right of action to redress perceived violations of § 3(b), and no right may be implied.  See Touche Ross & Co., 442 U.S. at 571 (concluding that, where "the plain language of the provision weighs against implication of a private remedy," silence in the legislative history "reinforces our decision not to find such a right of action implicit within the section").  Indeed, Congress remained silent about the description that the Deputy Director be a United States citizen with a "professional background and experience in patent or trademark law."  The Committee Report on the American Inventors Protection Act of 1999 nowhere discusses the "background and experience" descriptor applied to the Director and Deputy Director, contrasted to its sole description that the Commissioners "shall possess a demonstrated experience in patent and trademark law."  H.R. Conf. Rep. No. 106-287 at Sec. 613.  The report mentions the Deputy Director in only one line: "The Director shall appoint a Deputy Director to act in the capacity of the Director if the Director is absent or incapacitated."  Id.  Nothing in that discussion – or in any of the other discussions of the Act in the legislative history – permits an inference, or even hints, that the "background and experience" descriptor creates private rights or permits private actions.  See also 145 Cong. Rec. E1788 (Aug. 5, 1999) (no mention of the standard with regard to the Deputy Director); 145 Cong. Rec. E1752 (Aug. 5, 1999) (same); 145 Cong. Rec. E1756 (Aug. 5, 1999) (same).   As the D.C. Circuit teaches in analogous contexts,

> there is simply no reason to believe that Congress intended that federal employees . . . would be entitled to sue over the procedures used to hire coworkers.  The plain language of these statutory provisions does not suggest such a cause of action. . . .  The cited statutory provisions were merely intended to facilitate the streamlining of the civil service appointment system, not to protect individual employees from comparatively less well trained and less experienced term employees.

Am. Fed. of Gov't Employees, AFL-CIO v. Rumsfeld, 321 F.3d 139, 143 (D.C. Cir. 2003) (denying right of action to plaintiffs challenging hiring of coworkers under 5 U.S.C. §§ 3301-3302 ("OSHA")).  So here.  Nothing in the statute or legislative history suggests a right to sue for more "well trained" or "experienced" employees or officers in the USPTO.

The lack of a private right of action under § 3(b) is consistent with the text of other patent law sections in Title 35 held to prohibit private rights of action.  See, e.g., Madey v. Duke Univ., 413 F. Supp. 2d 601, 612 (M.D.N.C. 2006) (denying private right of action under 35 U.S.C. § 202); Sagoma Plastics, Inc. v. Gelardi, 366 F. Supp. 2d 185, 191 (D. Me. 2005) (denying private right of action under 35 U.S.C. § 116 consistent with findings from the Federal and Sixth Circuits); Gen-Probe, Inc. v. Ctr. for Neurologic Study, 853 F. Supp. 1215, 1217-18 (S.D. Cal. 1993) (same for § 202).  As other courts have held, the conclusion that no private right of action may be implied is "supported by the fact that elsewhere in the patent statutes," Congress "did explicitly grant private causes of action.  See, e.g., 35 U.S.C. § 281 (a 'patentee shall have remedy by civil action for infringement of his patent'); 35 U.S.C. §§ 141-145 (applicant whose patent is rejected by the Patent Office on appeal may pursue his claim in the federal courts)." Gen-Probe, 853 F. Supp. at 1218 (internal quotations and citations omitted).  That Congress knew how to create private rights in the same statute – by expressly providing for them in other

parts of the statute – indicates that Congress did not intend to create the right here.[7]  See Touche

Ross & Co v. Redington, 442 U.S. 560, 573 (1979).

Because Congress did not create a private right of action by describing the structure of

USPTO's officers in § 3(b), plaintiffs' first and third causes of action unambiguously must be

dismissed.  Similarly, because § 3(b) does not create any enforceable rights, plaintiffs' APA

challenge in its second cause of action also must fail.  See Califano v. Sanders, 430 U.S. 99, 107

(1977) ("APA does not afford an implied grant of subject-matter jurisdiction permitting federal

judicial review of agency action.").  As noted below, plaintiffs lack prudential standing to pursue

an APA claim for the same reasons it lacks a private cause of action.  See Am. Fed. of Gov't

Employees, 321 F.3d at 143 (citing Mudd v. White, 309 F.3d 819, 824 (D.C. Cir. 2002) (finding

that the plaintiff lacked prudential standing because he had no private cause of action under the

relevant statute)).  Because both an enforceable right and a mechanism to remedy an alleged

violation of that right are required to sue the sovereign, the possibility that the APA may provide

a remedy means nothing where § 3(b) does not provide any underlying right.  See Gonzaga

Univ. v. Doe, 536 U.S. 273, 283-84 (2002); Alexander v. Sandoval, 532 U.S. 275, 286 (2001);

see also Am. Fed. of Gov't Employees, 321 F.3d at 145 (noting that causes of action relying on

---

[7]  As explained below, the unreviewable discretion afforded the Secretary to appoint a Deputy
Director counsels against any private right of action as well.  The statute is "drawn in such broad
terms that in a given case there is no law to apply."  Citizens to Preserve Overton Park, Inc. v.
Volpe, 401 U.S. 402, 410  (1971).  Moreover, as described below, any of plaintiffs' complaints
about "spurious" rejections of patent applications are properly addressed through the
comprehensive patent law system provided in Title 35 including appeal of a final decision of the
agency refusing to patent a claimed invention in either district court or the Federal Circuit.  35
U.S.C. §§ 141, 145.  Nothing permits plaintiffs collaterally to appeal rejected applications by
asserting a private right of action under section 3(b), particularly when an established right of
administrative and judicial review exists.

section 702 of the APA for jurisdiction must claim injury from a "legal wrong" or adverse affect "within the meaning of a relevant statute," and denying prudential standing to plaintiffs who could point to no private right created by "a relevant statute"). Accordingly, plaintiffs' claims must be dismissed.

## III.    PLAINTIFFS' APA CLAIM IS NOT REVIEWABLE BY THE COURT

The APA excepts from review actions where "statutes preclude judicial review," or where "agency action is committed to agency discretion by law." 5 U.S.C. §§ 701(a)(1), 701(a)(2). Even assuming that the absence of a private right of action is not fatal to plaintiffs' APA claim as described above, and that the Secretary's appointment of the Deputy Director is "final agency action" within the meaning of the APA, the appointment is action "committed to agency discretion by law" and unreviewable under the APA. 5 U.S.C. § 701(a)(2).

### A.    Section 3(b) Provides No Judicially Manageable Standards Of Review

Although there exists a presumption that agency action is reviewable, agency action is unreviewable, when, as here, "statutes are drawn in such broad terms that in a given case there is no law to apply." S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945). "Even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." Heckler v. Chaney, 470 U.S. 821, 830 (1985). If no "judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" Heckler, 470 U.S. at 830. Even if statutes set forth criteria to be considered in agency action, action is not

-21-

reviewable if that criteria is not "judicially manageable."  <u>Nat'l Federal of Fed. Employees v.</u>

<u>United States</u>, 905 F.2d 400, 405 (D.C. Cir. 1990).  Such actions are not justiciable under the

APA and must be dismissed.  <u>See</u> <u>Webster v. Doe</u>, 486 U.S. 592, 600-01 (1988).

      For that reason, the Supreme Court held that an employee termination decision by the

Director of the Central Intelligence Agency ("CIA") was unreviewable under the APA.  <u>Webster</u>,

486 U.S. at 600.  Section 102(c) of the National Security Act provided for termination of the

CIA's employees whenever the Director "shall deem such termination necessary or advisable in

the interests of the United States."  <u>Id.</u>  The Supreme Court refused to review the Director's

termination decision, noting that the statutory language "fairly exudes deference to the Director,

and appears to us to foreclose the application of any meaningful judicial standard of review."  <u>Id.</u>

As a practical matter, the Court questioned how it could gather evidence to test a termination

against the standard.  "Short of permitting cross-examination of the Director concerning his

views of the Nation's security and whether the discharged employee was inimical to those

interests," the Court saw "no basis on which a reviewing court could properly assess an Agency

termination decision."  <u>Id.</u>  The Court noted that the structure of the statute and the importance of

security decisions supported its conclusion that review was unavailable under the APA.  <u>Id.</u>

      The teaching of <u>Heckler</u> and <u>Webster</u> have compelled courts to conclude that actions are

not reviewable where the language of the statute, structure of the statutory scheme, objectives of

the statute, legislative history and the nature of the administrative action permit broad agency

discretion.  <u>See, e.g.</u>, <u>Hammond v. Comptroller of the Currency</u>, 878 F. Supp. 1438, 1445 (D.

Kan. 1995) (citing <u>Block v. Community Nutrition Inst.</u>, 467 U.S. 340, 345 (1984)); <u>see also</u>

<u>Cappadora v. Celebrezze</u>, 356 F.2d 1, 5-6 (2d Cir. 1966) (analyzing whether the practical

requirements of the task to be performed, absence of available standards or even the fact that no

useful purpose could be served by judicial review precluded APA review).  Thus, courts have

found unreviewable actions under statutes, for example,

• stating that Federal banking agencies "shall issue a notice of disapproval of [employment notices] . . . if the competence, experience, character, or integrity of the individual . . . indicates that it would not be in the best interests of the depositors," Hammond, 878 F. Supp. at 1446 (analyzing 12 U.S.C. § 1831i(e)); and

• requiring identification of proposed base closures under nine specifically enumerated categories, including (1) current operational readiness; (2) availability and condition of land and facilities at both existing and potential receiving locations; (3) force requirements at receiving locations; (4) cost and manpower implications; (5) extent and timing of potential cost savings; (6) economic impact on the base area community; (7) community support at the receiving locations; (8) environmental impact; and (9) the implementation process involved, see Nat'l Federation of Fed. Employees, 905 F.2d at 403 (analyzing Pub. L. No. 100-526, 102 Stat. 2623, §§ 201(1), 201(2) (1988).

See also Carlin v. McKean, 823 F.2d 620, 622-23 (D.C. Cir. 1987) (analyzing 39 U.S.C. §

202(c)); Steenholdt v. FAA, 314 F.3d 633, 638 (D.C. Cir. 2003) (analyzing 49 U.S.C. §

44702(d)(2)).  In Hammond, the court concluded that it could not judge whether a person lacked

the "competence, experience, character and integrity" described in the statute for disapproval

actions.  878 F. Supp. at 1446.  Because the statute and regulations did not define the terms, but

left "these general terms to be construed by the agency," and "because the statutory language is

silent as to how much 'competence' or 'experience' is necessary to protect the interests of the

depositors or a troubled bank or of the public, and provides no definitions for competence or

experience, a court would be unable to review the [agency's] determination without simply

substituting its own judgment for the expert opinion of the agency."  Id.

Likewise, in National Federation of Federal Employees, the D.C. Circuit noted the

absence of judicially manageable standards, even though it acknowledged that criterion for

-23-

agency action was provided by statute.  "[T]he problem is not that the Act is devoid of criteria

. . . [r]ather the rub is that the subject matter of those criteria is not judicially manageable."  905

F.2d at 405.  The criterion set forth by statute would require the court to "second-guess[] the

Secretary's assessment of the nation's military force structure and the military value of the bases

within that structure."  Id.  Because the "federal judiciary is ill-equipped to conduct reviews of

the nation's military policy," it concluded that the decisions "are better left to those more expert

in issues of defense" – the agency.  Id.

        The same is true here:  the Secretary of Commerce, upon nomination by the Director, is

best suited to determine who should be appointed to act as the Director in the Director's absence

or incapacitation under the language of the Act.  The statute generally describes only that the

Deputy Director "shall be a citizen of the United States who has a professional background and

experience in patent or trademark law."  As in Hammond, there is no definition in the text or

legislative history about what "professional background" or "experience" in patent or trademark

law means, but "leaves these general terms to be construed" by the Secretary.  878 F. Supp. at

1446.  The description that the Deputy Director "shall" be a United States citizen with

experience in patent or trademark law does not change the analysis.  See Blancett, 2006 WL

696050 at *9 ("[W]hether 'shall' commands or merely authorizes is determined by the objectives

of the statute[.]").

        Additionally, the absence of any factors considered to constitute professional experience

or background in patent or trademark law in the legislative history supports the unreviewability

of the Secretary's appointment.  If anything, in predecessor bills, it was noted that the description

was "minimal and vague," vesting in the hiring officer "alone" the authority to "consider what is

necessary to carry out" the USPTO's functions.  H.R. Comm. Rep. No. H521-45, 243 (Sept. 14,

1995 and March 8, 1996) (statement of Timothy Reardon, congressional liaison, USPTO

Society).  Indeed, Congress previously heard that such descriptors provided a "lack of checks

and balances on the appointment of officers."  Id.  Nonetheless, Congress purposefully did not

constrain the Secretary's discretion in selecting a Deputy Director suited to carry out the mission

of the USPTO.  Cf. United States v. Wells, 519 U.S. 482, 495 (1997) (stating that Congress is

presumed to incorporate an interpretation of language that has previously been interpreted in a

statute if it uses nearly identical language in another statute).

 Similarly, nothing in the structure or objectives of the Act suggests any constraints on the

Secretary's broad discretion.  To the contrary, the vague language confirms that Congress did not

intend to enlist the judicial branch in policing appointment decisions, particularly in light of the

traditional understanding that appointments should not be reviewed by the courts.  See, e.g.,

Carlin, 823 F.2d at 623-24 (citing In re Hennen, 38 U.S. (13 pet.) 230, 261-62 (1839) for the

"venerable precedent" that "this Court can have no control over the appointment or removal, or

entertain any inquiry into grounds for removal").  The Act was intended to provide the USPTO

more control and less micro-management and to reduce patent litigation.  By drafting the statute

without judicially manageable standards, Congress intended the appointment of the Deputy

Director (and indeed, the Director, the Commissioner of Patents and Commissioner of

Trademarks) to be committed to the Secretary's (or the President's) unreviewable discretion.  As

Congress recognized, only those most intimately familiar with the workings of the USPTO (e.g.,

the Director and Secretary) should consider the factors significant for its managers and officers.

Plaintiffs' complaint illustrates how judicial inquiry into what constitutes "professional background and experience in patent or trademark law" would impermissibly result in little more than substitution of the court's judgment for that of the Secretary.  Plaintiffs allege a list of perceived inadequacies in the Deputy Director.  (Compl. ¶¶ 20–36.)  Yet, plaintiffs do not reveal whether the presence of one qualification in their list would be adequate in their view to constitute a professional background and experience in patent or trademark law.  Would one of the qualifications be adequate?  Two?  Six?  All?

As is clear from these practical considerations, Congress did not set any tangible parameters for what "professional background and experience" entails.  See Webster, 486 U.S. at 600 (providing no judicial review if no parameters are available).  Plaintiffs evidently contend that the Deputy Director's prior experience advising the Speaker, House and Senate leadership, and senior Congressional staff on issues including intellectual property protection is inadequate professional background and experience in patent or trademark law.  (Compl. ¶¶ 16, 36.)  But whether and to what extent a person has had experience in patent or trademark law is a determination left to the Secretary who has an understanding of the USPTO and its requirements. "[S]urely, given the possible range of" experiences and backgrounds in patent or trademark law, "an effort to reduce" the qualifications "to a few categories . . . is quite artificial and arbitrary." Public Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 427 (D.C. Cir. 1989) (Silberman, J. concurring).  "Once one recognizes that, it follows that judicial review of the application of this phrase is not available."  Id.

The Secretary is best suited to determine who should serve in an advisory position within the USPTO to implement the policies and priorities as he sees fit, without interference by private

citizens who are, perhaps, unsatisfied with the number of patents that they have been able to obtain. To allow third-parties to second guess the adequacy of the credentials of an officer in an important agency like the USPTO would cripple the improved functioning of the agency as contemplated by Congress in the Act. Courts would be called to judge the qualifications of the Deputy Director and even Commissioners and examiners by disgruntled patent applicants. Indeed, it is not unimaginable that litigants disagreeing with the policies of a Secretary, Director, or Deputy Director will pursue litigation challenging policies postured as questions on the qualifications of the implementing officers. Judicial intervention in such policy disputes is unquestionably inappropriate. Policy-laden decisions – like appointment of a Deputy Director – require a "complicated balancing of a number of factors which are peculiarly within [the Secretary's and Director's] expertise." Chaney, 470 U.S. 821, 832. As such, they are questions uniquely answered by the Secretary and unreviewable by this court.[8]  See also Warth v. Seldin,

_____

[8]  Countless statutes provide that persons with "professional background and experience" in various subject areas shall be appointed as officers of various agencies. Congress certainly did not intend to open the floodgates of litigation by permitting review of such varied discretionary determinations through third-party lawsuits. See, e.g, 15 U.S.C. § 790(a)(2) ("The Director shall be a person who, by reason of professional background and experience, is specially qualified to manage an energy information system."); 42 U.S.C. § 7135 ("The Administrator shall be a person who, by reason of professional background and experience, is specially qualified to manage an energy information system."); 42 U.S.C. § 7381a(b)(2) ("The Director shall be an individual, who by reason of professional background and experience, is specially qualified to advise the Under Secretary on all matters pertaining to science, engineering, and mathematics education at the department."); 42 U.S.C. § 16391(b) ("The Coordinator shall be an individual who, by reason of professional background and experience, is specially qualified to advise the Secretary on matters pertaining to technology transfer at the Department."); 42 U.S.C. § 16537(c) ("To be eligible for appointment as a distinguished scientist under this section, an individual, by reason of professional background and experience, shall be able to bring international recognition to the appointing institution of higher education or National Laboratory in the field of scientific endeavor of the individual."); 42 U.S.C. § 16538(d)(2) ("The Director shall be an individual who, by reason of professional background and experience, is especially qualified to advise the Secretary on, and manage research programs addressing, matters

422 U.S. 490, 508 n.18 (1975) ("Citizens dissatisfied with provisions of particular laws need not

overlook the availability of the normal democratic process.").

**B.    The Civil Service Reform Act Of 1978 Precludes APA Review**

The Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111, as amended,

<u>codified</u> <u>throughout</u> 5 U.S.C. ("CSRA"), regulates federal personnel practices and personnel

actions like employment decisions and appointments.  5 U.S.C. § 2302(a)(2).  The CSRA

provides a "comprehensive" scheme of protections and remedies for federal employment

disputes and "prescribes in great detail the protections and remedies applicable . . ., including the

availability of . . . judicial review."  <u>United States v. Fausto</u>, 484 U.S. 439, 448, 443 (1988).  The

CSRA generally "precludes district courts from taking jurisdiction over CSRA-related claims."

<u>Steadman v. Governor, U.S. Soldiers' and Airmen's Home</u>, 918 F.2d 963, 967 (D.C. Cir. 1990).

Such CSRA-related claims are considered to be "committed to the agency discretion by law" and

unreviewable under the APA.  <u>Fausto</u>, 484 U.S. at 443.

In <u>United States v. Fausto</u>, the Supreme Court found that "[a] leading purpose of the

CSRA was to replace the haphazard arrangements for administrative and judicial review of

personnel action, part of the 'outdated patchwork of statutes and rules built over almost a

century' that was the civil service system."  484 U.S. 439, 444 (1988) (quoting S. Rep. No. 969,

95th Cong., 2d Sess. 3 (1978)).  "Congress responded to this situation by enacting the CSRA,

which replaced the patchwork system with an integrated scheme for administrative and judicial

---

pertaining to long-term and high-risk technological barriers to the development of energy
technologies."); 50 U.S.C. § 403-3e(b) ("An individual appointed as Director of Science and
Technology shall have a professional background and experience appropriate for the duties of
the Director of Science and Technology."); <u>see also</u> 35 U.S.C. § 6(a) (administrative patent
judges "shall be individuals of competent legal knowledge and scientific ability").

review . . . ." Id. at 445.  Even the total exclusion of a class of aggrieved persons from the

protections of the CSRA does not leave them free to pursue other judicial remedies.  See id. at

447.  To the contrary, the CSRA generally "precludes district courts from taking jurisdiction

over CSRA-related claims."  Steadman, 918 F.2d at 967.  The D.C. Circuit, sitting en banc, has

made clear that, when judging the preclusive effect of the CSRA, "it is the comprehensiveness of

the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that

counsels judicial restraint."  Spagnola v. Mathis, 859 F.2d 223, 227 (D.C. Cir. 1988).  Instead,

the CSRA must be given preclusive effect if the claims are "within CSRA's ambit."  Id. at 229.

　　　　"In assessing whether the CSRA precludes [plaintiffs'] claims, the determinative question

is whether they fall within its purview."  Doe v. Goss, No. 04-2122, 2007 WL 106523, *8

(D.D.C. Jan. 12, 2007).  The CSRA governs both officers, "individual[s] who [are] appointed in

the civil service by . . . the head of an Executive agency," 5 U.S.C. § 2104, and employees,

defined to include officers.  5 U.S.C. § 2105.  The CSRA's merit system principles make clear

that  plaintiffs' claims come within the CSRA's broad remedial scheme.  Those principles

require that "recruitment should be from qualified individuals from appropriate sources in an

endeavor to achieve a work force from all segments of society, and selection and advancement

should be determined solely on the basis of relative ability, knowledge, and skills, after fair and

open competition which assures that all receive equal opportunity."  5 U.S.C. § 2301(b)(1)

(emphasis added).  Prohibited personnel practices actionable under the CSRA include the taking

of any "personnel action," like appointments, in violation of the Act's merit system principles.  5

U.S.C. § 2302(b)(11); Kalil v. Johanns, 407 F. Supp. 2d 94, 101 (D.D.C. 2005) ("The definition

of 'prohibited personnel actions' includes those actions which violate the Merit Systems

Principles.").  Such protests may be filed with the Office of Special Counsel, whose responsibility it is to investigate the charges and, where appropriate, to seek remedial action from the agency and the Merit Systems Protection Board.  See 5 U.S.C. § 1206.

Indeed, by the terms of 35 U.S.C. § 3, "[o]fficers and employees of [the PTO] shall be subject to the provisions of title 5, United States Code, relating to Federal employees," like the CSRA.  35 U.S.C. § 3(c); see also H.R. Conf. Rep. No. 106-287, at Title VI Patent and Trademark Office, Sec. 613 ("The PTO will be subject to all provisions of title 5 of the U.S. Code governing federal employees.").   Thus, if a current patent or trademark examiner protested his or her working conditions, for example, or the conditions of employment caused by management, she would be limited to the CSRA's remedial scheme.

To be sure, plaintiffs here are not federal employees like those typically precluded from APA causes of action by the CSRA.  Nonetheless, the CSRA is a reasoned determination by Congress about who, if anyone, may pursue grievances for "claimed violation[s] . . . of law" related to personnel actions.  Even if third parties are excluded from complaining about the hiring of an allegedly unqualified manager under the CSRA, "the absence of provision for [them] to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather the manifestation of a considered congressional judgment that they should not have statutory entitlement to review."  Fausto, 484 U.S. at 448-49; see also Graham v. Ashcroft, 358 F.3d 931, 935 (D.C. Cir. 2004) (same).  To give third parties "a more substantial right to judicial review than was available to personnel granted a right to judicial review under the CSRA," Fausto, 484 U.S. at 449, would certainly be, as courts characterize, "an extravagant result" that

-30-

should not be indulged.[9]  Carducci v. Regan, 714 F.2d 171, 175 (D.C. Cir. 1983).  Because complaints about allegedly improper appointments would be covered by the CSRA for USPTO personnel and are covered by the extensive scheme of the CSRA, the court lacks subject matter jurisdiction over plaintiffs' claims.  See Graham, 358 F. 3d at 935.  Plaintiffs' APA cause of action must be dismissed.[10]

## IV.    PLAINTIFFS LACK STANDING TO CHALLENGE THE SECRETARY'S APPOINTMENT OF THE DEPUTY DIRECTOR

Even if 35 U.S.C. § 3(b) created a right enforceable in the federal courts and assuming that plaintiffs were not precluded from raising an APA cause of action, plaintiffs lack standing. Plaintiffs have not alleged sufficient facts to show that they have a valid case or controversy under Article III of the Constitution.  Nor can plaintiffs establish that they maintain prudential standing to pursue their statutory claims.  As a result, they cannot shoulder their burden to show by a preponderance of the evidence that this court maintains subject-matter jurisdiction over their claims.  Under Rule 12(b)(1) and 12(b)(6), plaintiffs' action must be dismissed.

### A.    Plaintiffs Lack Article III Standing

Article III, § 2, of the Constitution "extends the 'judicial power' of the United States only to 'Cases' and 'Controversies.'"  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998).  Article III standing requires that a plaintiff have suffered "an (1) injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

---

[9]  This is particularly true where the statute contains other provisions specifically identifying third party rights.  See, e.g., 35 U.S.C. § 134(c) (setting forth third party rights of examination).

[10]  "It is no answer to invoke the principle that agencies must follow their regulations . . .. [T]he CSRA precludes judicial review of" claims that an agency "violated its own regulations in taking personnel action."  Graham, 358 F.3d at 935.

imminent, not conjectural or hypothetical--(2) which is fairly traceable to the challenged act, and

(3) likely to be redressed by a favorable decision."  Nat'l Treasury Employees' Union v. United

States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks and citation omitted); see

also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The doctrine of standing is

"an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan,

504 U.S. at 560, and "the party invoking federal jurisdiction bears the burden of establishing its

existence." Steel Co., 523 U.S. at 104.

### 1.    Plaintiffs Have Not Alleged An Adequate Injury in Fact

To satisfy the injury in fact requirement, plaintiffs must establish that they have suffered

a particularized, "distinct and palpable injury" to themselves, rather than one "shared in

substantially equal measure by all or a large class of citizens."  Warth, 422 U.S. at 499, 501.  The

injury requirement of the standing analysis is "to give the plaintiff a personal stake in the

outcome," Baker v. Carr, 369 U.S. 186, 204 (1962), sufficient to ensure "that the issues will be

contested with the necessary adverseness and that the litigation will be pursued with the

necessary vigor to assure that the . . . challenge will be made in a form traditionally thought to be

capable of judicial resolution."  Flast v. Cohen, 392 U.S. 83, 106 (1968).

Plaintiffs' generalized complaints about the alleged deterioration in the quality of issued

patents and trademarks, timeliness of examination of patent and trademark applications, and the

overall morale of patent and trademark examiners" (Compl. ¶ 40), are precisely the type of

generalized harms that, if true, are "shared in substantially equal measure by all or a large class

of citizens."[11] Warth, 422 U.S. at 501. Accordingly, they are inadequate to confer plaintiffs with standing to pursue their claims. Similarly, plaintiffs' allegation about a "history of labor problems with the corps of examiners" is not a concrete injury suffered by plaintiffs' themselves. (Compl. ¶¶ 41, 42; see also Reuss v. Balles, 584 F.2d 461, 469-70 (D.C. Cir. 1978) (rejecting standing because the plaintiff "would be faced with the fact that his is a very generalized grievance, one held in common, to some degree, by virtually all members of the public").)

Plaintiffs fare no better with their more specific claims of harm. Plaintiffs Aharonian and Morsa claim that they are "forced to pay from thousands to tens of thousands of dollars in fees to argue spurious rejections of their applications" and that they have suffered delays in the issuance of their patents. (Compl. ¶ 13.) While economic loss certainly constitutes cognizable harm, see, e.g., Sierra Club v. Morton, 405 U.S. 727, 737-38 (1972), plaintiffs have not alleged that they have had to pay wrongful fees from wrongful rejections of patent applications by the Deputy Director or even during the Deputy Director's tenure. See 35 U.S.C. § 41 (setting fees and permitting Director to set other fees); 37 C.F.R. § 1.16, et seq. (2006) (same). Statutory payment of fees that are otherwise lawful do not constitute an "injury" in fact. Cf. Reuss v. Balles, 584 F.2d 461, 469 (D.C. Cir. 1978) (stating that economic injury from governmental regulation of bond market was inadequate for standing).

Moreover, Plaintiffs Aharonian and Morsa claim that the rejections of their patent applications have been "spurious," but such adjectives are not fact. See Fair Empl. Council of Greater Washington, Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1275 (D.C. Cir. 1994) (stating that

---

[11]  In fact, plaintiffs would have no standing to challenge any perceived decline in the morale of the examiners themselves.

allegations of injury during pleading stage cannot be too general).  They must allege "more than labels and conclusions" to set forth the factual predicate for the allegation that the rejections of their patents were erroneous, and from there for the court to infer that the economic loss was wrongful, as opposed to a lawful collection of statutory fee requirements.  And although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss for lack of jurisdiction, it need "not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Kowal, 16 F.3d at 1276.  And even if Aharonian and Morsa claimed specific injuries from "spuriously" rejected patents, such injuries are not redressable by challenging the appointment of the Deputy Director, but must be challenged under the scheme set forth in Title 35.  The comprehensive patent law system provides rights and remedies for rejected patents, including appeal of a final decision of the agency refusing to patent a claimed invention in either district court or the Federal Circuit.  See 35 U.S.C. §§ 141, 145.  Nothing permits plaintiffs collaterally to appeal rejected applications now by asserting them as injuries to attack the appointment of the Deputy Director.  Any such injuries are cognizable, if at all, under the scheme provided in Title 35.

    Similarly, although Aharonian and Morsa both claim that they currently have patents being examined before the USPTO, neither allege any facts to show that those patent applications have been delayed to any detriment.[12]  Even assuming that Aharonian and Morsa

---

[12]  According to the USPTO, the average patent application pendency as of August 14, 2003 was 24.6 months.  See www.uspto.gov/main/faq/p220026 (last visited Sept. 14, 2007).  Plaintiffs have not alleged that any delays are unreasonable (though the inference is, perhaps, allowable by their characterization of the delay as "egregious.").  Even if delay alone could constitute injury, they have not demonstrated realistic danger of sustaining any direct injury from future delays in processing their currently pending applications.  "Although the fact that harm or injury may occur in the future is not necessarily fatal to a claim of standing[,] ... [such circumstances can]

-34-

could allege that the delay is unreasonable, procedural delay alone is inadequate.  As the D.C.

Circuit has noted, "a 'procedural injury' is inadequate to establish standing absent an alleged

'discrete injury' flowing from the procedural violation."  Nat'l Treasury Employees Union, 101

F.3d at 1429 (quoting Lujan, 504 U.S. at 571-72).  A plaintiff claiming a procedural injury "must

show *both* (1) that their procedural right has been violated, *and* (2) that the violation of that right

has resulted in an invasion of their concrete and particularized interest,...*not just* the alleged

procedural violation."  Ctr. for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1159 (D.C. Cir.

2005) (internal citations omitted) (emphasis in original).  Plaintiffs Aharonian and Morsa do not

link up delay, for example, to loss of royalties or lost patent terms.  See, e.g., Raduga USA Corp.

v. U.S. Dep't of State, 440 F. Supp. 2d 1140, 1144 (S.D. Cal. 2005) (recognizing that delays

causing lost sales constitutes economic harm).  Nor could they, as Title 35 provides for adjusted

patent terms for agency-caused delays in the issuance of a patent and also provides for

reasonable royalties "beginning on the date of publication of the application for such patent[.]"

35 U.S.C. § 154(d)(1).

The sum of plaintiffs Lentini's and Pressman's allegations of harm is that they currently

represent patent applicants before the USPTO and that the "continually lengthening delays

between the time patent applications are filed and initial responses are promulgated" cause the

loss of patent prosecution fees.  (Compl. ¶ 13.)  As with Aharonian and Morsa, neither Lentini

nor Pressman specifically allege that they have suffered unreasonable delay with patent

---

lessen the concreteness of the controversy and thus mitigate against a recognition of standing."
United Transp. Union v. I.C.C., 891 F.2d 908, 913 (D.C. Cir.1998) (internal quotation marks
omitted).  Thus, when a party alleges future injury alone, the party "must demonstrate a realistic
danger of sustaining a direct injury[.]"  Id. (quoting Babbitt v. United Farm Workers Nat'l
Union, 442 U.S. 289, 298 (1979)).

applications since the Deputy Director's appointment.  As for expectation of future delay under

the Deputy Director, plaintiffs fail to demonstrate "a realistic danger of sustaining a direct

injury[.]"  Babbitt, 442 U.S. at 298.  Accordingly, they do not suffer an adequate injury in fact.

2.      **Plaintiffs Do Not Allege Injuries Fairly Traceable To The Appointment of the Deputy Director**

The absence of traceability is clear.  Even assuming that the injuries above constitute

cognizable harms, the "links in the chain of causation between the [alleged] conduct and the

asserted injur[ies] are far too weak for the chain as a whole to sustain the appellants' standing."

Allen v. Wright, 468 U.S. 737, 759 (1984).   First, plaintiffs' generalized complaints about

injuries in or pre-dating 2005 could not have been caused by the Deputy Director's appointment

in 2007.  Moreover, complaints about the alleged deterioration in the quality of issued patents

and trademarks, timeliness of examination of patent and trademark applications, and accuracy of

the examiners' application decisions, depend on the actions of third-parties – examiners hired by

the Director.  (Compl. ¶¶ 13, 41, 42.)  Where "the necessary elements of causation . . ..hinge on

the independent choices of the regulated [or managed] third party," e.g., examiners or

Commissioners, "it becomes the burden of the plaintiff to adduce facts showing that those

choices have been or will be made in such manner as to produce causation and permit

redressability of injury."  Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 938

(D.C. Cir. 2004) (quoting Lujan, 504 U.S. at 562) (internal quotation marks omitted).  Plaintiffs

fall far short of their burden.[13]

---

[13]  The traceability requirement is relaxed when appointments are alleged to offend the
Appointments Clause.  Landry v. FDIC, 204 F.3d 1125, 1131 (D.C. Cir. 2000) ("[J]udicial
review of an Appointments Clause claim will proceed even where any possible injury is radically
attenuated.").  Plaintiffs do not allege any structural violation and may not invoke the relaxed

It is indisputable that by statute the Director "shall appoint such officers, employees (including attorneys), and agents of the Office as the Director considers necessary to carry out the functions of the Office." 35 U.S.C. § 3(b)(3) (emphasis added). Moreover, the Commissioners operate by statute "as the chief operating officers for the operations of the Office relating to patents and trademarks, respectively and shall be responsible for the management and direction of all aspects of the Office that affect the administration of patent and trademark operations[.]" 35 U.S.C. § 3(b)(2)(A). Those Commissioners are appointed by the Secretary, not the Deputy Director. Id. To the extent plaintiffs allege that personnel hiring decisions and the selection of the office's chief operating officers cause their injuries (see, e.g., Compl. ¶¶ 2, 13, 39), they are not fairly traceable to the Deputy Director.

Any broader complaint about a perceived decline in the quality of patents and therefore impact on plaintiffs' economic livelihood putatively due to the Deputy Director is foreclosed by prior decisions in this Circuit. (See, e.g., Compl. ¶ 2.) Nearly three decades ago, in Reuss v. Balles, this Circuit rejected a similar charge that regulation of a bond market by an improperly constituted group caused economic harm. 584 F.2d at 469. The court noted that the "actions taken pursuant to the decisions of the [challenged government body] are but part, albeit an important part, of the forces that determine the value of one's financial holdings." Id. Nonetheless, the court held that "it does not necessarily follow that the actions of [the group's] members . . . can be singled out in suits seeking to counter the perceived declines in the nation's economy." Id. While the Deputy Director, similarly, plays a role in the USPTO's functioning,

---

standing requirements discussed in Landry and related cases.

plaintiffs cannot single out her appointment to "counter the perceived declines" in the patent system as a whole.

The holding of <u>Reuss</u> remains true today.  Thus, in <u>Committee for Monetary Reform v. Board of Governors of the Federal Reserve System</u>, this Circuit rejected the right of plaintiff business owners to complain about economic harm resulting from monetary instability and high interest rates set by the Federal Reserve.  766 F. 2d 538, 542 (D.C. Cir. 1985).  "[I]n light of the complexity of the modern economy," the court found that it was "highly uncertain whether and to what extent such policies were responsible for the adverse economic conditions that allegedly resulted in harm[.]"  <u>Id.</u>  Accordingly, it expressed doubt that courts should resolve "such abstract issues, which are better addressed through political and economic debate[.]"  <u>Id.</u>

At base, plaintiffs cannot trace their injuries to the appointment of the Director and their action should be dismissed.

### 3.    Plaintiffs Have Not Met And Cannot Meet The Requirement Of Showing Redressability

Even if plaintiffs had pled a specific injury, and were able to show that it was caused by the complained of actions, plaintiffs would still be unable show redressability – "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact."  <u>Vermont Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 771 (2000) (internal citation omitted).  For the same reason that plaintiffs cannot prove causation, they cannot establish redressability.[14]  Even if the Deputy Director were, as plaintiffs request, dismissed, and a new

---

[14]  Indeed, the focus of plaintiffs' complaint is on perceived inadequacies in the Deputy Director's patent law background and experience.  The statute, however, describes a Deputy Director as having background and experience in either patent <u>or</u> trademark law.  Plaintiffs' injuries would evidently be unaddressed if an individual with background and experience in

Deputy Director of plaintiffs' liking appointed, it remains that the Secretary, Director and Commissioners maintain hiring authority over officers, examiners and other employees.[15]  There is not a substantial likelihood, indeed no likelihood, that their requested relief will remedy their alleged injuries.  See Free Enterprise Fund, 2007 WL 891675 at *5.

### B.    Plaintiffs Lack Prudential Standing

Prudential standing "denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987).  These prudential concerns require that a "plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision . . . invoked in the suit."  Bennett v. Spear, 520 U.S. 154, 162 (1997).  Even if plaintiffs suit did not fatally suffer from the deficiencies outlined above, plaintiffs cannot show that their claims are among those that are envisioned by 35 U.S.C. § 3(b).  "Here, it cannot reasonably be inferred that Congress intended to permit this suit under [§ 3], because [plaintiffs] have no basis upon which to rest a private right of action under [§ 3]."  Am. Fed. of Gov't Employees, 321 F.3d at 143.  Thus, for the same reasons that an implied right of action cannot be inferred from the language, structure

---

trademark law – but with no background and experience in patent law – were appointed as Deputy Director.

[15]  Not only do those requested remedies fail to address the supposed harm from the Deputy Director's appointment, but plaintiffs also request relief in excess of any procedures plaintiffs are entitled to under the Act.  Plaintiffs additionally request that the Secretary establish "agency rules to assess" what qualifies as experience sufficient to meet the description in § 3(b).  (Compl. at 14 ¶ 4.)  Under 5 U.S.C. § 706, plaintiffs cannot request the issuance of rules, contending that such rules have been unreasonably withheld.  Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63-64 (2004) (noting limited scope of "unreasonably withheld" provision, which applies only where agency fails to take discrete action that it is legally required to take).

or history of the Act, plaintiffs lack prudential standing to pursue claims under the statute or the

APA.  <u>Id.</u> at 144 (rejecting APA claim for same reason that plaintiffs lacked prudential standing

to pursue a claim under the statute); <u>see also</u> <u>Fed. for Am. Immigration Reform, Inc. v. Reno</u>, 93

F.3d 897, 902-03 (D.C. Cir. 1996).  Accordingly, plaintiffs' claims must be dismissed under

Rule 12(b)(6) as well.

//

//

//

//

//

//

//

//

//

## CONCLUSION

For the foregoing reasons, plaintiffs' claims should be dismissed.

Respectfully submitted this 10th day of October, 2007.

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SUSAN K. RUDY
Assistant Director

OF COUNSEL

SHARYN DANCH
Associate Counsel
Office of General Counsel, Office of
General Law
United States Patent and Trademark
Office
600 Dulany St, Alexandria, VA  22314
Telephone: (571) 272-7009
sharyn.danch@uspto.gov

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendant

RUSSELL W. CRAIG
Deputy Chief
General Litigation Division
Office of the General Counsel
U.S. Department of Commerce
14th & Constitution Ave., NW, Rm 5889
Washington, DC 20230
Telephone: (202) 482-1362
rcraig2@uspto.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2007, a true and correct copy of the foregoing Defendant's Motion to Dismiss was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong
HELEN H. HONG

# EXHIBIT 1



**United States Patent and Trademark Office**                    **NEWS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Press Releases > **Commerce Secretary Gutierrez Names Margaret J.A. Peterlin Deputy Under Se for Intellectual Property and Deputy Director of the United States Patent and Trademark Offic**

|  |  |
|---|---|
| **PRESS RELEASE** | **May 8, 2007** |
| Contact: | #07-15 |
| **Jennifer Rankin Byrne or Brigid Quinn** | |
| (571) 272-8400 or | |
| jennifer.rankin_byrne@uspto.gov | |
| brigid.quinn@uspto.gov | |

### Commerce Secretary Gutierrez Names Margaret J.A. Peterlin Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office

Secretary of Commerce Carlos M. Gutierrez has appointed Margaret J.A. Peterlin to serve as Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the Commerce Department's United States Patent and Trademark Office (USPTO).

"Margaret is a tremendous asset to the USPTO. With an impressive track record of success across several disciplines, she has established herself as a proven leader, strategic legal thinker, and knowledgeable legislative tactician," said Jon Dudas, Under Secretary of Commerce for Intellectual Property and Director of the USPTO. "Margaret will apply these skills to USPTO's challenges, which she well understands from her time representing the leadership of the U.S. House of Representatives. Margaret's leadership will be instrumental in the USPTO's efforts to work with applicants to enhance the quality of their applications, process patents and trademarks in a timely manner, and operate in a way that motivates our employees and inspires our international partners."

Before joining the USPTO, Ms. Peterlin was Counsel for Legal Policy and National Security Advisor for the Speaker of the U.S. House of Representatives, J. Dennis Hastert. In this role, she advised the Speaker, House and Senate leadership, and senior staff on legislative policy and strategy, including judiciary issues such as intellectual property protection, and international relations issues.

She previously was General Counsel to Richard Armey, Majority Leader of the U.S. House. She clerked on the Fifth Circuit Court of Appeals for Judge Jerry E. Smith. Ms. Peterlin also served as an Officer in the U.S. Navy for four years, working in the communications field.

A native of Daleville, Alabama, Ms. Peterlin holds a bachelor of arts from the College of the Holy Cross. She earned a legal degree cum laude from the University of Chicago, where she was the founding Editor in Chief of *The Chicago Journal of International Law* . She is a member of the New York State Bar.

### ###

# EXHIBIT 2



## United States Patent and Trademark Office

ABOUT

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Executive Biographies > Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office**



### Margaret J.A. Peterlin

Deputy Under Secretary of Commerce for          PRINT VERSION
Intellectual Property and
Deputy Director of the United States Patent and Trademark
Office

Margaret J.A. Peterlin was sworn in as Deputy Under
Secretary of Commerce for Intellectual Property and
Deputy Director of the United States Patent and Trademark
Office (USPTO) in April 2007.



As Deputy Under Secretary of Commerce for Intellectual Property, Ms. Peterlin advises
the President, the Secretary of Commerce, and the Administration about intellectual
property matters. As Deputy Director of the USPTO, she administers the laws of granting
patents and trademarks, and the day-to-day management of the $1.7 billion agency and
its more than 8,000 employees.

As a leader in intellectual property (IP) policy, Ms. Peterlin helps develop and articulate Administration positions on all
patent, copyright, and trademark issues, both domestic and foreign. She also promotes strong IP policy globally,
including strategies to thwart the theft of U.S. IP around the world. As an agency leader, Ms. Peterlin implements
policies and initiatives that provide innovators with quality and timely patent and trademark examinations. She also
provides strategic leadership to employees to help them achieve organizational excellence.

Before joining the USPTO, Ms. Peterlin was Counsel for Legal Policy and National Security Advisor for the Speaker of
the U.S. House of Representatives, J. Dennis Hastert. In this role, she advised the Speaker, House and Senate
leadership, and senior staff on legislative policy and strategy, including judiciary issues such as IP protection, and
international relations issues.

She previously was General Counsel to Richard Armey, Majority Leader of the U.S. House. She clerked on the Fifth
Circuit Court of Appeals for Judge Jerry E. Smith. Ms. Peterlin also served as an Officer in the U.S. Navy for four
years, working in the communications field.

A native of Daleville, Alabama, Ms. Peterlin holds a bachelor of arts from the College of the Holy Cross. She earned a
legal degree cum laude from the University of Chicago, where she was the founding Editor in Chief of *The Chicago
Journal of International Law*. She is a member of the New York State Bar and lives in Virginia.

#### United States Patent and Trademark Office (USPTO)

Since 1790, the basic role of the United States Patent and Trademark Office (USPTO) has remained the same: to promote the
progress of science and the useful arts by securing for limited times to inventors the exclusive right to their respective
discoveries (Article 1, Section 8 of the United States Constitution). Today, the USPTO is a federal agency in the Department of
Commerce, headquartered in Alexandria, Virginia. Through the issuance of patents, the USPTO encourages technological
advancement by providing incentives to invent, invest in, and disclose new technology worldwide. Through the registration of
trademarks, the agency assists businesses in protecting their investments, promoting goods and services, and safeguarding
consumers against confusion and deception in the marketplace. By disseminating both patent and trademark information, the
USPTO promotes an understanding of intellectual property protection and facilitates the development and sharing of new
technologies worldwide.

---

*Is there a question about what the USPTO can or cannot do that you cannot find an answer for? Send questions about USPTO programs and
services to the* **USPTO Contact Center (UCC)**. *You can suggest USPTO webpages or material you would like featured on this section by E-mail to
the* **webmaster@uspto.gov**. *While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other
improvements on the website.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREGORY AHARONIAN,<br>DAVID LENTINI,<br>DAVID PRESSMAN,<br>and<br>STEVE MORSA,<br><br>                Plaintiffs,<br><br>             v.<br><br>CARLOS GUTIERREZ,<br>SECRETARY OF COMMERCE,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>    Civil Action No: 1:07-cv-01224 (JR) |

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Upon consideration of the papers filed by all the parties and arguments of counsel, it is

hereby

ORDERED that Defendant's Motion to Dismiss be, and hereby is, GRANTED.

Dated this _____ day of _____, 2007.

_____
HONORABLE JAMES ROBERTSON
United States District Court Judge