## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY AHARONIAN<br>440 Davis Court<br>San Francisco, CA 94111<br><br>DAVID LENTINI<br>1932 California Street<br>San Francisco, CA 94109<br><br>DAVID PRESSMAN<br>1070 Green Street<br>San Francisco, CA 94133<br><br>STEVE MORSA<br>223 Thousand Oaks Blvd.<br>Thousand Oaks, CA 91360,<br><br>              Plaintiffs,<br><br>   v.<br><br>CARLOS GUTIERREZ<br>SECRETARY OF COMMERCE<br>U.S. Department of Commerce<br>1401 Constitution Avenue, N.W.<br>Washington, DC 20230<br><br>             Defendant. | Civil Action No: 1:07-cv-01224(JR) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
## AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

INTRODUCTION ……………………………………………………………………… 1

I.  STANDING TO CHALLENGE APPOINTMENT TO ADJUDICATORY BODY... 2

II.  SOVEREIGN IMMUNITY IS WAIVED BY CONGRESS FOR THE TYPE
        OF ADVERSE AGENCY ACTIONS PERFORMED BY DEFENDANT  …..… 3

III.  MS. PETERLIN'S ACTIONS AS DEPUTY DIRECTOR ARE ADVERSELY
        AFFECTING THE PLAINTIFFS, INJURIES THAT ARE DUE TO HER
        LACK OF PROFESSIONAL EXPERIENCE ……………………………………. 4

             A.  CONTINUATION RULES CHANGES ………………………………… 5

             B.  NEW "OBVIOUSNESS" GUIDELINES …………………………........… 7

IV.  AN ILLEGAL AGENCY ACTION IS NOT AN "AGENCY DISCRETION
        BY LAW" EXEMPTED FROM APA REVIEW …………………………....….. 8

V.  DEFENDANT'S MOTION PROVIDES NO EVIDENCE OF ANY
        PROFESSIONAL QUALIFICATIONS OF MS. PETERLIN ……………………... 11

VI.  CONGRESSIONAL INTENT IS CLEAR THAT "PROFESSIONAL EXPERIENCE"
        REQUIRES PATENT OR TRADEMARK LEGAL SERVICES FOR CLIENTS …. 13

VII.  MS. PETERLIN COMPLETELY FAILS TO SATISFY THE
        REQUIREMENT OF 35 U.S.C. …………………………………………………... 16

VIII.  MS. PETERLIN'S LACK OF PROFESSIONAL EXPERIENCE VIOLATES
        THE INTENT OF THE 1999 PATENT REFORM LEGISLATION ……………… 16

CONCLUSION ……………………………………………………………………… 18

# TABLE OF AUTHORITIES

**CASES**                                                                   Page(s)

Abbott Laboratories v. Gardner, 387 U.S. 136 (1967) …………………………………….... 10

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971) ………………………… 10

Coleman v. Miller, 307 U.S. 433 (1939) …………………………………………….... 3

Federal Election Commission v. NRA, 6 F.3d 821, 826 (D.C. Cir. 1993) …….………  2, 3, 8

Freytag v. Commissioner, 501 U.S. 868 (1991) ……………………………………….. 2

KSR International v. Teleflex, 550 U.S. _____, 2007 ………………………….…….... 7

Landry v. FDIC, 204 F. 3d 1125 (D.C. Cir. 2000) ……………………….…………….. 2, 3, 8

Public Citizen v. Department of Justice, 491 U.S. 440 (1989) ……………………………  5

Tafas v. Dudas, 2007 U.S. Dist. LEXIS 80474 (E.D. Va., 31 October 2007) ……..…….......  6

## U.S. CONSTITUTION

Art. II, § 2, cl. 2 …………………………………………………………………………… 2

## STATUTES

5 U.S.C. § 701 …………………………………………………………...………………… 1

5 U.S.C. § 701(a)(2)……………………………………………….…...…………………  8

5 U.S.C. § 702 …………………………………………………………………………1, 4

5 U.S.C. § 706(2)(A)…………………………………………….…….…...……………  1

35 U.S.C. § 3(b)(1) …….…………………..………………….…….  1, 2, 3, 11, 14, 15, 16, 17

35 U.S.C. § 3(a)(2)(A) …………………………………………………………….…. 1

35 U.S.C. § 103 …………………………………………………………………… 7

35 U.S.C. § 120 ……………………………………………………………………… 6

Pub. L. 106-113, 113 Stat. 1536 ……………….……………………..…………………… 16

**RULES**

Fed. R. Civ. P. 12(b)(1) ……………………………………………………………… 1

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………… 1

**REGULATIONS**

72 Fed. Reg. 46716-46843 …………………………………………………………… 5

72 Fed. Reg. 57526 ………………………………………………………..………………… 7

# INTRODUCTION

Defendant has filed a Motion to Dismiss ("Motion") a lawsuit ("Complaint") filed by Plaintiffs that challenges Defendant's appointment of Ms. Margaret Peterlin to the office of Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director ("Deputy Director") of the United States Patent and Trademark Office ("USPTO"). Defendant seeks dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (jurisdiction) and 12(b)(6) (relief), as well as for a lack of standing.

Plaintiffs argue herein that they have standing in light of D.C. Circuit rules for standing in challenging appointments of "inferior Officers" to adjudicatory bodies, since Ms. Peterlin is such an officer appointed by Defendant to an adjudicatory body (the USPTO).

Plaintiffs also argue that this Court has jurisdiction under the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*, because Ms. Peterlin's failure to satisfy the requirements of 35 U.S.C. § 3(b)(1) (that she have "a professional background and experience in patent or trademark law") is directly harming the Plaintiffs. Her appointment by Defendant was "contrary to law" under 5 U.S.C. § 706(2)(A), and her inability to provide informed and meaningful "policy direction and management supervision for the office" as required by 35 U.S.C. §§ 3(a)(2)(A) and 3(b)(1) is a reviewable legal wrong for which Congress has waived sovereign immunity under 5 U.S.C. § 702.

This Court can provide specific relief, for example, ordering Defendant to rescind Ms. Peterlin's appointment. For these reasons, Plaintiffs petition this Court to deny Defendant's Motion.

## I.  STANDING TO CHALLENGE APPOINTMENT TO ADJUDICATORY BODY

The Appointments Clause of the Constitution states in part:

"[The President] … shall nominate, and by and with the Advice and Consent of the Senate, shall appoint … Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. Art. II, § 2, cl. 2.

Defendant is a Head of a Department, Ms. Peterlin is an inferior Officer (the Deputy Director of the USPTO is not a "mere employee"), and Congress by Law has vested the Appointment of Ms. Peterlin (35 U.S.C. § 3(b)(1)) in Defendant.

The D.C. Circuit's standing law (Landry v. FDIC, 204 F.3d 1125 (D.C. Cir. 2000) and FEC v. NRA, 6 F.3d 821(D.C. Cir. 1993)) governs standing to challenge invalid appointees to administrative agencies in the adjudicatory context.  In Landry v. FDIC, 204 F.3d 1125, 1131 (D.C. Cir. 2000), this Court stated, "… that judicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated."  (Citing Freytag v. Commissioner, 501 U.S. 868 (1991)).  Such injury may even be indirect.  In Federal Election Commission v. NRA, 6 F.3d 821, 826 (D.C. Cir. 1993), the D.C. District Court reasoned that even non-voting members of an adjudicatory body may exert "some influence" during deliberations by "their mere presence".  USPTO Deputy Director is much more than a "mere presence".

All Plaintiffs' patent applications (or patent applications for which they are counsel of record) that are pending at the USPTO are subject to the adjudicatory process of a patent examiner's approval of the specifications and claims of their patent applications.  Ms. Peterlin's

- 2 -

stated control of the day-to-day management of patent examiners is more than "some influence". First, any new patent examination guidelines which examiners are obligated to follow are subject to Ms. Peterlin's approval.  Second, hirings and firings of examiners or other USPTO employees are subject to Ms. Peterlin's approval, hirings and firings which influence the morale and performance of patent examiners.  Third, through her interactions with the USPTO Director Jon Dudas, Ms. Peterlin has influence over the decisions of the USPTO Board of Patent Appeals and Interferences, whose decisions are binding on patent examiners.  These administrative responsibilities of Ms. Peterlin, and others, meet at least the "some influence" standard for her appointment to be reviewable in light of <u>FEC v. NRA</u>, 6 F.3d 821, 826 (D.C. Cir. 1993).

Additionally, that Ms. Peterlin has a complete lack of such experience has resulted in her taking actions as Deputy Director that are directly injuring Plaintiffs, injuries that at least rise to the level of "radically attenuated" injuries for her appointment to be reviewable in light of <u>Landry v. FDIC</u>, 204 F.3d 1125, 1131 (D.C. Cir. 2000). Plaintiffs also argue that Ms. Peterlin has a complete lack of professional experience in patent or trademark law (thus violating the requirements of 35 U.S.C. § 3(b)(1)), on which point Defendant's Motion offers no evidence to the contrary.  This failure to satisfy a statutory requirement is not an "abstract intellectual problem", but rather a judicially-reviewable "concrete, living contest[s] between adversaries". See, e.g., <u>Coleman v. Miller</u>, 307 U.S. 433, 460 (1939).

## II.  SOVEREIGN IMMUNITY IS WAIVED BY CONGRESS FOR THE TYPE OF ADVERSE AGENCY ACTIONS PERFORMED BY DEFENDANT

Defendant argues on pages 13 and 14 of his Motion that his appointment cannot be challenged because of sovereign immunity. "A district court lacks jurisdiction over claims

against the United States unless the United States' sovereign immunity has been explicitly waived. . . . Only Congress may waive the sovereign immunity of the United States and Congress must 'unequivocally express its desire to do so' on the face of the statute." Defendant can only make this argument by ignoring legal wrongs that injure Plaintiffs due to Defendant's actions. "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. § 702.

As stated in Plaintiff's Complaint and further explained below, Defendant's illegal appointment of Ms. Peterlin as USPTO Deputy Director has directly injured Plaintiffs by adversely affecting their patent-prosecution activities. This injury is the type of legal wrong for which Congress has waived sovereign immunity so that Plaintiffs can seek judicial review. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof. ... The United States may be named as defendant in any such action." 5 U.S.C. § 702.

### III. MS. PETERLIN'S ACTIONS AS DEPUTY DIRECTOR ARE ADVERSELY AFFECTING THE PLAINTIFFS, INJURIES THAT ARE DUE TO HER LACK OF PROFESSIONAL EXPERIENCE

Since becoming Deputy Director of the USPTO in April 2007, Ms. Peterlin has engaged in a variety of agency actions that have concretely and particularly hurt Plaintiffs, hurts caused in part by her lack of professional experience in patent and trademark law. These hurts are more concrete and particular than, for example, an agency failing to disclose information,

which the Courts have held to be a sufficiently concrete an injury to confer standing. See, e.g., Public Citizen v. Department of Justice, 491 U.S. 440, 449 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

## A.  CONTINUATION RULES CHANGES

In August 2007, the USPTO announced changes to continuation rules practices that had been accepted practice for decades – "Changes to Practice for Continued Examination Failings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications", 72 Fed. Reg. 46716-46843 (Aug. 21, 2007).  Prior to the announcement, hundreds of this nation's patent professionals, based on their professional experience, protested the illegality of these rules, rules which would do nothing to improve patent quality or patent examination pendency times.  Hundreds of highly critical and detailed protests were filed with Congress, the Administration, the Patent Office, and the Office of Management and Budget, all to no avail. Most of these protests made the same arguments upheld by the District Court (all of these critical comments are available at: http://www.uspto.gov/web/offices/pac/dapp/opla/comments/fpp_continuation/continuation_comments.html).

As Deputy Director, Ms. Peterlin is actively involved in promoting these rules changes and was responsible in part for their final wording. Like many others, Plaintiffs were wrongly forced to disrupt their current patent prosecution strategies, and recalculate multi-year time schedules and budgets.  Unfairly, Plaintiffs had to start planning what constitutionally and statutorily guaranteed rights in their inventions, or their clients' inventions, would have to be

- 5 -

given up in light of new patent-claiming constraints in the new rules. These disruptions directly hurt Plaintiffs, a hurt directly traceable to Ms. Peterlin.

Another court has recently found that PTO management likely violated the law, in part because of PTO management's inadequate understanding of the PTO's role in the patent system. In Tafas v. Dudas, 2007 U.S. Dist. LEXIS 80474 (E.D. Va., 31 October 2007), a U.S. District Court granted a preliminary injunction prohibiting the USPTO from implementing the rules. The court agreed that the plaintiffs had a likelihood of success of showing that the rules changes violated a statute (35 U.S.C. §120) in light of Federal Circuit law. The court also ruled that guidelines issued by the USPTO to supplement the rules changes had a likelihood of being found to be too vague.

All of these problems were clear to patent professionals (which is why they submitted hundreds of protests), prior to and during the time period that Ms. Peterlin has been Deputy Director of the USPTO, with such professionals knowing that all patent applicants would be injured if the rules were implemented (and were indeed injured between the times the USPTO issued the rules and the court issued its injunction). But Ms. Peterlin, with no professional experience in patent law, with no experience in helping clients prosecute patent applications, was unable to assess such dire consequences of the rules changes. Ms. Peterlin did not have the professional experience to use the power of her office to manage the revision of the rules changes to remove the unconstitutional aspects that wrongly disrupted Plaintiffs' patent prosecution activities. Plaintiffs are directly hurt by Ms. Peterlin's lack of professional experience.

B.  NEW "OBVIOUSNESS" GUIDELINES

On October 10th, 2007, the USPTO issued new guidelines (72 Fed. Reg. 57526, 10 October 2007) for determining obviousness of inventions under 35 U.S.C. §103 in light of the Supreme Court decision <u>KSR International v. Teleflex</u> (550 U.S. ___, 2007). These new guidelines were developed by PTO employees under Ms. Peterlin's management and influence. The meaning of "obvious" has long bedeviled the patent world, with the courts for many years trying to offer guidelines as to what difference between the prior art and a new invention was sufficient for the new invention to be non-obvious.  In recent years, with the failure of that approach, the Supreme Court started using the language of "predictability", which the USPTO's new guidelines instruct the patent examiner to use as the basis of his or her obviousness determination. For example, 72 Fed. Reg. 57527, mostly quoting <u>KSR International</u>, states: "When considering obviousness of a combination of known elements, the operative question is thus 'whether the improvement is more than the predictable use of prior art elements according to their established functions."

However, for the most part, these new guidelines developed under Ms. Peterlin's management and influence provide no information and guidance as to what the Supreme Court means by "predictable" and "established".  To patent professionals, this is nothing more than substituting one vague term, "obvious" for other vague terms such as "predictable".  However, to Ms. Peterlin, with her lack of professional experience, such word games seem reasonable and of a nature that won't hurt the Plaintiffs and others, to the extent that she did not use her authority as Deputy Director to order the vagueness in these guidelines to be fixed.

Unfortunately, Plaintiffs and others still remain with no clear guidance to prepare patent claims for new and pending patent applications that are not "obvious", being unable to foresee how USPTO examiners, at some future point in time, will arbitrarily assign meanings to these vague terms.  The invariable result will be unreasonable rejections of legitimate patent claims, rejections fought by appeals within and above the USPTO.  All of this uncertainty and disruption to patent prosecution strategies directly hurts Plaintiffs, an injury that flows from the vagueness of the new guidelines which were created under Ms. Peterlin's management and influence.

Plaintiffs' injuries due to these agency actions are the direct result of Ms. Peterlin's substantial, not mere, influence over the USPTO as part of her responsibilities in managing the day-to-day operations of the USPTO.  Such injuries satisfies the requirements for standing established by the D.C. Circuit in the above-discussed Landry v. FDIC, 204 F.3d 1125 (D.C. Cir. 2000) and FEC v. NRA, 6 F.3d 821(D.C. Cir. 1993).

## IV.   AN ILLEGAL AGENCY ACTION IS NOT AN "AGENCY DISCRETION BY LAW" EXEMPTED FROM APA REVIEW

On pages 21 to 30, Defendant fundamentally argues that Plaintiffs are prohibited from challenging Defendant's appointment of Ms. Peterlin under the APA, because the APA exempts from review any actions where "agency action is committed to agency discretion by law".  5 U.S.C. § 701(a)(2).  Plaintiffs respond that clearly illegal actions are not a discretionary choice available to Defendant, who cannot act in contravention of statutory provision.  The issue is not if Defendant has the discretion to require that Ms. Peterlin satisfy 1, 2, 3 or more of Plaintiffs' qualifications as listed in paragraphs 20 to 36 of their Complaint, or any other list of

qualifications promulgated by Defendant to be a patent law professional – that is the Defendant's discretion. Rather the issue is if having <u>no</u> qualifications is a choice consistent with Congressional intent.

Consider, for example, a recent questionable appointment by the Defendant, where there is no statute with requirements for the appointee. In the 12 October 2007 issue of Science magazine, page 177 (see Attached Exhibit I), a news item mentions the Defendant's high-level appointment of Joel Harris to head the Commerce Department's Technology Council that promotes industrial developments in the United States. The article clearly states, with no objection by Mr. Harris, that Mr. Harris is a "32-year political operative with no scientific background or industrial experience to head a new office intended to foster innovation". Mr. Harris' lack of professional experience in technology policy matters has greatly disappointed many in industry, and indeed this Administration has been plagued with charges of multiple similar appointments of people lacking relevant professional backgrounds (which many citizens of the city of New Orleans can testify to).

At least for Mr. Harris, there are no federal statutes governing his qualifications to hold the office of the director of the Defendant's agency's Technology Council. Plaintiffs freely acknowledge that Defendant has the non-APA-reviewable discretion to appoint Mr. Harris, Mr. Harris' mother, or any other adult citizen of the United States. In the absence of any other constraints, Defendant has the unchallengeable discretion to appoint Mr. Harris.

But Defendant has no such discretion where there are clear requirements ("professional experience") mandated by federal statute for which Congress has expressed its intent for those requirements. Such a requirement is very specific, given the multiple regulations of professionals in the United States, as opposed to Defendant's insinuation that the statute uses

"broad terms" (see footnote 7, page 20 of Motion), or "general terms" (Motion, page 23, line 11).
Such a requirement of professionalism is also not a mere expectation of Congress, as the
Defendant insinuates (lines 8 to 9, page 8 of Motion – "Congress … expecting merely that …").
Patent and trademarks lawyers work very hard for many years to establish their professional
credentials. Congress did not intend for "professional" to be a mere resume affectation, but
rather a specific requirement (that Ms. Peterlin fails to satisfy). Thus, Defendant has no
discretion to appoint a Deputy Director under 35 U.S.C. § 3 who is completely unprofessional in
patent and trademark law, someone such as Ms. Peterlin who has been employed to practice
patent or trademark law.

Even if treated as an agency discretion, Plaintiffs still have standing, since those
adversely affected by a discretionary agency decision generally have standing to complain that
the agency based its decision upon an improper legal ground. See, e.g., Abbott Laboratories v.
Gardner, 387 U.S. 136, 140 (1967); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S.
402, 410 (1971).

This is also not a case of "micro-management" (Motion, page 17, line 10; see also page
25, line 16) of Defendant's appointment (a discretion such as "could Defendant have found a
person with more qualifications than Ms. Peterlin's qualifications?"), but rather a case of
Defendant's complete failure to manage (i.e., not insuring that Ms. Peterlin has at least one
qualification). It is also not a question of whether or not Congress wanted someone "more 'well
trained' or 'experienced'" as Deputy Director (Motion, page 19, line 4), the emphasis on "more",
but rather that Congress wants someone with **any** professional experience in patent or trademark
law. What Defendant implicitly concedes, in not providing evidence to the contrary, is that Ms.
Peterlin has **no** professional experience.

Defendant's assumption that Congress left the determination of "professional experience" solely to Defendant rests on the further assumption that Defendant "has an understanding of the USPTO and its requirements". Defendant offers no facts to support such an understanding, an understanding challenged, for example, by Defendant's approval of major changes to patent continuation rules, changes so misunderstanding of patent law that a federal district court blocked those rules changes, using language suggesting that a permanent injunction will be granted in light of the rules being illegally formed.

Defendant's assumption that his appointment of Ms. Peterlin is a policy-laden decision not subject to judicial review (Motion, page 27) mischaracterizes the nature of the statute. "Professional experience" is not a matter of subjective policy. Defendant, and any of his successors, can appoint as Deputy Director any patent or trademark law professional from any political background to shape and implement Defendant's patent examination policies, as long as that appointee is a patent or trademark law professional. Ms. Peterlin is not such a professional.

For any and all of these reasons, Defendant's illegal appointment of Ms. Peterlin is reviewable under the APA.

## V.  DEFENDANT'S MOTION PROVIDES NO EVIDENCE OF ANY PROFESSIONAL QUALIFICATIONS OF MS. PETERLIN

Despite 52 pages of legal research and case law citations, Defendant's Motion completely ignores the main statutory challenge of Plaintiffs' complaint.  Namely, is there any evidence that Ms. Peterlin has any "professional … experience in patent or trademark law"? 35 U.S.C. § 3(b)(1).  While Plaintiffs offer 16 specific facts as to Ms. Peterlin's complete lack of professional experience (Complaint, paragraphs 20 to 35), only one page of the Motion's 52

pages purports to be of any relevance to the statute and the legality of Defendant's appointment of Ms. Peterlin, yet that one page provides no such evidence. Moreover, Defendant's refusal to provide evidence fails to address Ms. Peterlin's lack of statutorily-required professionalism in two crucial ways.

First, Defendant argues that the statute's use of "professional" is done so "broadly and vaguely" (Motion, page 2, line 17) as to render it meaningless. But Defendant provides no discussion of what might be meant by "professional" such that Ms. Peterlin's complete lack of experience might reasonably qualify as "professional". Reasonable agency discretion, e.g., may be that of choosing between 1, 2, 3, 4 or more years of patent or trademark law employment. But choosing <u>no</u> years of such employment is not a reasonable discretionary choice, That is, "broad" and "vague" imply something more than <u>zero</u> experience. Further, Defendant fails to disclose any evidence of Congressional intent that non-practicing exposure to patent or trademark law qualifies as "professional".

Second, in light of reasonable terms of what being a legal professional (generally, specific licensure and acceptance of fees/salary in return for providing legal services while working, e.g., at either a law firm, (non-profit) corporation, university, or government agency), Defendant offers no evidence that Ms. Peterlin has any such professional experience in the required practice areas of patent or trademark law. The only discussion of Ms. Peterlin's employment history occurs on page 9 of Plaintiff's Motion – "served as Counsel for Legal Policy and National Security Advisor for the Speaker of the House of Representatives, J. Dennis Hastert", "worked as General Counsel to Richard Armey, Majority Leader of the House", and "clerked for the Honorable Judge Jerry E. Smith in the United States Court of Appeals for the Fifth Circuit". Nowhere does Defendant offer specific examples of professional patent or

trademark services Ms. Peterlin provided to Rep. Hastert, Rep. Armey or Judge Smith. No specific evidence is provided of any professional activities by Ms. Peterlin while at a corporation or law firm. Ms. Peterlin has never published articles on patent or trademark law, and is not a member of professional patent or trademark law associations.

Even the Director of the USPTO, Jon Dudas, himself a former Deputy Director does not offer any evidence of Ms. Peterlin's professional experience in patent or trademark law. Defendant quotes Mr. Dudas as saying in part: "With an impressive track record of success across several disciplines, she has established herself as a proven leader, strategic legal thinker, and knowledgeable legislative tactician." (Motion, page 9, line 16). After all, Ms. Peterlin could be a "proven leader" in non-patent law, a "strategic legal thinker" in non-patent law, and a "tactician" in non-patent law, achieving successes with non-patent law efforts such as international security law for which Ms. Peterlin has much experience and has been commended. Mr. Dudas' reference to other "disciplines" is at best irrelevant, and a confession of lack of "professional background and experience" in the two disciplines statutorily required – patent or trademark law.

## VI.  CONGRESSIONAL INTENT IS CLEAR THAT "PROFESSIONAL EXPERIENCE" REQUIRES PATENT OR TRADEMARK LEGAL SERVICES FOR CLIENTS

Defendant sarcastically asks, "Yet, plaintiffs do not reveal whether the presence of one qualification in their list [Complaint, paragraphs 20 to 36] would be adequate in their view to constitute a professional background and experience in patent or trademark law. Would one of the qualifications be adequate? Two? Six? All?" (Motion, page 26.) The question answers itself on the facts of this case: zero is less than the bare minimum of two that Defendant dares to

advance as plausible.  No matter how low a level the bar for qualification might be set by the

Defendant or this Court, Defendant offers no evidence that Ms. Peterlin's qualifications can rise

above such a level.

      This stark evidentiary failure is not consistent with Congressional intent, since

Congress has signaled its intent that candidates for USPTO Deputy Director satisfy at least one

of the qualifications on Plaintiff's list.  In July 2004, the Senate formally approved of the

Defendant's appointment of Jon Dudas as the Director of the Patent and Trademark Office, a

position that he still holds.  Prior to this appointment, Mr. Dudas served as Deputy Director of

the Patent and Trademark Office.  Prior to his administrative work, Mr. Dudas was a legislative

aide in Congress, with one key accomplishment being his role in the passage of the 1996

Trademark Anti-Counterfeiting Consumer Protection Act.  And very importantly, prior to his

legislative activities, Mr. Dudas <u>professionally</u> practiced trademark law at the Chicago law firm

of Neal Gerber & Eisenberg (see Executive Biography of Jon Dudas,

[www.uspto.gov/biographies/bio_dudas.htm](www.uspto.gov/biographies/bio_dudas.htm)). Mr. Dudas' professional trademark experience at

the law firm included providing, for a fee, the type of legal services subject to malpractice

concerns.  It was this professional trademark experience that Congress signaled is a minimum

level of experience to satisfy the statute.  35 U.S.C. § 3(b)(1).

      Defendant's 52 pages of case law citations are a smokescreen to distract the Court from

this main issue – nothing in Ms. Peterlin's employment background qualifies as sufficiently

"professional" in any area of patent or trademark law to statutorily qualify her to be an officer of

an adjudicatory body.  Indeed, a previous Director of the USPTO, Bruce Lehman, would now

fail to satisfy the statute, because at the time of his appointment, Mr. Lehman's only professional

experience was as a very successful and accomplished <u>copyright</u> lawyer (and indeed, he spent

much time on copyright issues while Director of the USPTO).  (Technically, the official now called the "Director of the United States Patent and Trademark Office" was then called the "Commissioner for Patents and Trademarks".)  There was widespread dissatisfaction in the patent community with Lehman's administration of the USPTO.  His incompetence was attributed to his lack of experience with patent law.  It must be inferred that Congress included the phrase "patent or trademark" in 35 U.S.C. § 3 as a test to insure that no future USPTO Director or Deputy Director have only tenuous connections to the activities of the USPTO, such as only having professional copyright law experience.

Congressional intent also contradicts Defendant's characterization of the statute's requirement of professional experience as something "to delineate the relationship among the officers and employees of the USPTO" (Motion to Dismiss, page 16, line 9).  This erroneous characterization contradicts the intent of Congress that the statute delineate between professional and unprofessional people who are given great deference while serving as Deputy Director of an agency concerned with intellectual property (IP) law, a field of law more complex than most because of its tight interweaving of science and law. Indeed, the court should take note of the fact that patent practitioners are required to have a background in science or engineering to qualify to take the patent bar exam.  Congress, by specific statutory provision (a provision rare across the U.S. Code) indicated its' intent that the Deputy Director have professional experience in IP law that overlaps the professional activities of patent and trademark lawyers and examiners, whose conduct is directly managed by, and is the immediate responsibility of, the Deputy Director.  Ms. Peterlin has no such professional experience.

## VII.  MS. PETERLIN COMPLETELY FAILS TO SATISFY
## THE REQUIREMENTS OF 35 U.S.C. § 3(b)(1)

Thus, Defendant offers no definition of "professional" experience under which Ms. Peterlin might qualify as a professional in patent or trademark law, and the ignores the clear intent of Congress that such experience include paid legal work, such as that at a law firm or corporation.  These two omissions are consistent with Defendant's failure to establish agency guidelines for evaluating candidates for the position of Deputy Director.  But even implicitly relying on generally accepted definitions of what it means to be a "professional", Defendant offers no evidence to show that Ms. Peterlin has any professional experience in patent or trademark law.  Across 52 pages, Defendant's Motion completely fails to show how Ms. Peterlin satisfies the clear language of the statute, for one simple reason - there are no such facts to show that Ms. Peterlin is a "citizen of the United States who has a professional background and experience in patent or trademark law".  35 U.S.C. § 3(b)(1).  Defendant's appointment of Ms. Peterlin was and is clearly erroneous and illegal under the federal statute.

## VIII.  MS. PETERLIN'S LACK OF PROFESSIONAL EXPERIENCE VIOLATES
## THE INTENT OF THE 1999 PATENT REFORM LEGISLATION

Among the many problems with Defendant's argument is that it lacks internal consistency.  For example, on pages 1 of 8 of Defendant's Motion, Defendant goes to great lengths to outline the "bargain" that Congress struck in its 1999 patent reform legislation (American Inventors Protection Act of 1999, Pub. L. 106-113, 113 Stat. 1536, 29 Nov 1999).  If the Court accepts Defendant's position regarding this background, then the Court should accept the complete background.  While Defendant notes that this 1999 bargain included a substantial

- 16 -

degree of deference to the Deputy Director in the day-to-day management of the USPTO, the Defendant fails to note that a quid pro quo for such deference is contained in other aspects of the 1999 "bargain".

Specifically, as a precondition for being entitled to such deference, the Deputy Director is required to have a "professional background and experience in patent or trademark law".  35 USC § 3(b)(1).  In other words, in order to <u>justify</u> the administrative deference granted to the Deputy Director, Congress specifically established a clear standard for qualifications of the Deputy Director.  Without satisfying those qualifications, why should anyone give deference to the Deputy Director?  Indeed, if Congress did not care about having a qualified Deputy Director, they would not have passed a law, and instead would have given the Defendant the discretion to appoint even the most unqualified person to be USPTO Deputy Director.  Defendant effectively asks this Court to act as if Congress had been silent in that regard.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should not be granted.

Respectfully submitted this ninth day of November, 2007,


/s/ Stephen Christopher Swift
Stephen Christopher Swift
Swift Law Office
Suite 600
1800 Diagonal Road
Alexandria, Virginia  22314-2840

Telephone: (703) 418-0000
Facsimile: (703) 647-7420
E-Mail: steve@swift.law.pro
D.C. Bar No. 428459

Attorney for Plaintiffs
Gregory Aharonian, David Pressman,
David Lentini, and Steve Morsa

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2007, a true and correct copy of the foregoing Plaintiffs' Opposition to Defendant's Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Stephen Christopher Swift
Stephen Christopher Swift

# EXHIBIT I

# NEWSMAKERS

EDITED BY YUDHIJIT BHATTACHARJEE



## ON CAMPUS

**MUZZLED.** Two years after Lawrence Summers made the fateful remarks about women and science that got him pushed out of the Harvard University presidency, some still treat him like a pariah: A recent instance involved female faculty members at the University of California (UC) who led a successful petition to have Summers disinvited as a dinner speaker at the September meeting of the UC Board of Regents. But the controversy has earned Summers the sympathy of some of his erstwhile critics.

Among them is Harvard psychologist Howard Gardner, who says, "I don't know anyone at Harvard who favors what happened at UC Davis. ... The regents and faculty who opposed [Summers's] appearance look like ignorant fools." The petition that led the regents to rescind the invitation cited Summers's "poor relationships with both women and underrepresented minority faculty at Harvard." Summers says, "I was somewhat surprised that none of the [UC] chancellors spoke up publicly on the precedent set by rescinding speaking engagements because of controversy."

Regents' spokesperson Trey Davis dismisses the episode as "no big deal," adding that "you don't want to annoy people needlessly." Maureen Stanton, an evolutionary biologist at UC Davis who signed the petition, says what she and others were really objecting to was the decision by the university's governing body to grant a private audience to a controversial figure like Summers. "It wasn't a free-speech issue," she says. "Had Summers been invited to a public forum at the university on how to diversify science and engineering, we would have had no problems. We would simply have shown up with some tough questions."

CREDITS (TOP TO BOTTOM): SOURCE: AP; ROSE LINCOLN/HARVARD NEWS OFFICE; U.S. DEPARTMENT OF COMMERCE; WORLD HEALTH ORGANIZATION

## THEY SAID IT

"I am now a heavenly body. I found out about it yesterday. ... I was blown away. It came out of the clear blue sky—just like an asteroid."

—Actor George Takei, who played Sulu in the original *Star Trek* series, reacting to the International Astronomical Union's decision to name an asteroid in his honor. Discovered by Japanese astronomers in 1994, 7307 Takei is located between Mars and Jupiter.

## INSIDE GOVERNMENT

**YOUNG BLOOD.** The U.S. Commerce Department has picked a 32-year-old political operative with no scientific background or industrial experience to head a new office intended to foster innovation. Joel Harris, who has worked at the White House and for Republican former Colorado governor William Owens, will direct the Technology Council, which replaces the department's 19-year-old Technology Administration.

The Technology Administration, which once boasted a $10 million budget and 50-plus person staff, including an under-secretary for technology, was allowed to wither on the vine until Congress and the White House agreed this year to eliminate it. But experts don't hold out much hope for the new council, tucked within the secretary's office and lacking a budget. "It's definitely an opportunity lost," says Christopher Hill of George



Mason University in Fairfax, Virginia, a veteran player in technology issues. "I can't imagine that it is a prescription for actually doing anything."

Harris hopes to prove the critics wrong. "Technology is a critical driver for our economy," he says, "and my job will be to identify and coordinate action on the most important issues."

Got a tip for this page? E-mail people@aaas.org

## Movers >>

**WORLDLY-WISE.** Barring objections from the U.S. Senate, the controversial chief of global health at the Department of Health and Human Services (HHS) could soon be headed off to a new assignment. Last week, a Senate committee considered whether to approve William Steiger as U.S. ambassador to Mozambique. Steiger, 37, a Ph.D. in Latin American history and the son of a former Republican congressman, has been accused by HHS employees and outside researchers of micromanaging HHS scientists' international activities and pushing conservative, pro-industry positions (*Science*, 10 September 2004, p. 1551). Recently, he came under fire for allegedly suppressing a global health report from the U.S. Surgeon General.



At last week's hearing, Steiger deflected questions about some of these matters from the presiding member, Russ Feingold (D–WI), asserting that the Surgeon General's report "had serious flaws" and disputing the scientific value of an international AIDS meeting. He said he has "gained much experience" that has prepared him for dealing with Mozambique's problems with AIDS and malaria. The committee is expected to approve the nomination, as is the full Senate. HHS spokesperson Bill Hall said "no decisions have been made" about when Steiger might depart or who would take over his position. "His departure will be a relief for HHS scientists and professionals," says University of California, San Francisco, international health expert Thomas Novotny, a former HHS official.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Gregory Aharonian, David Lentini, | ) | |
| David Pressman, and Steve Morsa, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. **07-1224-JR** |
| | ) | |
| The Honorable Carlos Guitierrez, | ) | |
| Secretary of Commerce, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### [PROPOSED] ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Upon consideration of the papers filed by all the parties and arguments of counsel, it is

hereby

ORDERED that Defendant's Motion to Dismiss be, and hereby is, DENIED.

Dated this _____ day of _____, 2007.


_____
The Honorable Judge James Robertson
United States District Judge