IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY AHARONIAN, ) | |
| DAVID LENTINI, ) | |
| DAVID PRESSMAN, and ) | |
| STEVE MORSA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No: 1:07-cv-01224 (JR) |
| v. ) | |
| ) | |
| CARLOS GUTIERREZ, ) | |
| SECRETARY OF COMMERCE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant did not purport to file a motion for summary judgment. Indeed, because this Court lacks jurisdiction over plaintiffs' claims, any arguments on the merits would be improper. Nonetheless, plaintiffs largely ignore the jurisdictional arguments set forth in defendant's motion to dismiss, and fault defendant in the bulk of their opposition for not opposing the merits of plaintiffs' claims. (See Pls' Opp'n to Def's Mot. to Dismiss & Mem. of P&A in Support Thereof ("Pls' Opp'n") at 11-17.) Thus, although plaintiffs characterize defendant's motion to dismiss as a "smokescreen to distract the Court" from the issue of whether the Deputy Director is "statutorily qualified" (id. at 14), the motion to dismiss establishes instead the constitutionally-significant and threshold issue that this Court lacks jurisdiction to entertain any of plaintiffs' claims. As has been clearly established by Supreme Court law, "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1860-61 (2006). Plaintiffs'

opposition does nothing to demonstrate that its claims are properly before this Court.

Significantly, plaintiffs fail to address the majority of defendant's jurisdictional arguments. That silence alone requires dismissal of plaintiffs' claims: failure to oppose an argument in a motion to dismiss may be construed in this Circuit as a concession of the argument. See, e.g. Reading v. United States, Civ. No. 06-1873, 2007 WL 1267283 (D.D.C. March 2, 2007) ("The court deems the plaintiffs' failure to oppose as a concession of the motion.") (citing Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1295 (D.C. Cir. 2004)); LCvR 7(b) ("If [an opposing] memorandum is not filed within the prescribed time, the court may treat the motion as conceded."). Accordingly, plaintiffs' failure to dispute that they lack a private of right action under 35 U.S.C. § 3(b) or that the United States waived its sovereign immunity in that provision unambiguously requires dismissal of their first and third causes of action. Similarly, silence about the Civil Service Reform Act's preclusive effect on APA review, as well as the absence of arguments addressing prudential standing for their APA claim, requires dismissal of plaintiffs' second cause of action. As shown in defendant's motion to dismiss, those arguments deprive this Court of jurisdiction to decide each of plaintiffs' claims.

Putting aside those unchallenged bars, plaintiffs advance no arguments that provide grounds for exercising jurisdiction over the only cause of action they attempt to defend – their APA claim in the second cause of action. In answer to defendant's motion establishing that the appointment of the Deputy Director is committed to the Secretary's discretion under the broad language of § 3(b), plaintiffs contend in conclusory fashion that § 3(b) provides "very specific" requirements of the Deputy Director, implicitly informed by the professional credentials required to join the patent bar. (Pls' Opp'n at 9, 10.) Plaintiffs provide no citation to the statute or

legislative history, and instead create a list of desired qualifications themselves. Congress's decision not to enumerate what "professional experience" entails in either the statute or the legislative history, however, in conjunction with the broad language used in § 3(b), establish the absence of judicially manageable standards for review. Plaintiffs make no effort to – and indeed cannot – distinguish cases finding terms like "experience" in statutes to be so general as to preclude review. (See Def's Mot. at 21-28.)

    Plaintiffs also press that they have alleged adequate injuries to maintain Article III standing for their APA cause of action, citing Landry v. FDIC, 204 F.3d 1125 (D.C. Cir. 2000) and Fed. Election Comm'n v. NRA, 6 F.3d 821 (D.C. Cir. 1993). Even considering the new allegations plaintiffs impermissibly level in their opposition, see, e.g., Gray v. Am. Academy of Achievement, No. 04-626, 2005 WL 645227, *4 n. 2 ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."), neither Landry nor NRA assist plaintiffs' cause. First, the plaintiffs in both Landry and NRA could claim specific harm because each had appeared before improperly constituted adjudicatory boards that had issued decisions adverse to the plaintiffs. Unlike Landry and NRA, plaintiffs cannot allege that they have appeared before, and received adverse decisions from, an adjudicatory board containing the Deputy Director as a decision-maker. Characterizing the entirety of the USPTO as an "adjudicatory board," as plaintiffs suggest, is erroneous and unsupported by fact and does not compel a different result. As set forth in prevailing D.C. Circuit law, the Deputy Director's appointment may not "be singled out in suits seeking to counter the perceived declines" in patent protections. Reuss v. Balles, 584 F.2d 461, 469 (D.C. Cir. 1978).

    Second, Landry simply provides that parties raising constitutional defects in

appointments under the Appointments Clause may rely on a "structural injury" to relax the injury and traceability prongs of the standing inquiry. Landry, 204 F.3d at 1130-31. Of course, plaintiffs do not, and could not, allege the "limited class" of structural errors meriting relaxed standing requirements here. Id. The Deputy Director was appointed by the Secretary as required by the Constitution and by statute, and plaintiffs' standing must be analyzed under ordinary, prevailing standing law. Whether the parties' had adequate injuries was not even at issue in NRA; the adjudicatory body had levied civil sanctions, which are undoubtedly "injuries in fact." 6 F.3d at 824. Plaintiffs do not allege specific injuries resulting from "direct governmental authority" – like the civil sanctions imposed by an adjudicatory board in NRA. At base, because plaintiffs cannot each establish standing for each of their claims, they must be dismissed.

Made plain in plaintiffs' opposition is that their claims are really a wholesale attack on the policies and procedures of the USPTO. Such far-reaching assaults on the policies of the USPTO may not be lodged, however, by challenging the qualifications of the Deputy Director. Because they are precluded by statute and the Constitution from raising their claims, plaintiffs' complaint must be dismissed in its entirety.

## I.     SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS

Plaintiffs do not contest that 35 U.S.C. § 3 lacks a waiver of sovereign immunity. Accordingly, for the reasons set forth in defendant's motion to dismiss, the Court lacks jurisdiction over plaintiffs' first and third causes of action and should dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs do argue, however, that the waiver of sovereign immunity provided in § 702 of the APA allows its second cause of action to proceed. The general waiver of sovereign immunity in the APA, 5 U.S.C. § 702, does not extend to those

federal agency actions or decisions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); Heckler v. Chaney, 470 U.S. 821, 832 (1985). This ban on judicial review of actions committed to agency discretion by law is jurisdictional. See Baltimore Gas & Electric Co. v. FERC, 252 F.3d 456, 458 (D.C. Cir. 2001). Accordingly, dismissal of an action that falls under 5 U.S.C. § 701(a)(2), like plaintiffs' claim here, is proper under Fed. R. Civ. P. 12(b)(1). Accord id.

## II. SECTION 3(b) DOES NOT PROVIDE A PRIVATE RIGHT OR A PRIVATE RIGHT OF ACTION

As shown in defendant's motion to dismiss, the text of § 3(b) provides a statutory mechanism for ensuring the continuity of the USPTO's functions in the absence or incapacitation of the Director. (See Def's Mot. at 14-21.) The text is descriptive of the USPTO's structure only. Nothing in the statute or legislative history suggests a right to sue for "well trained" or "experienced" employees or officers in the USPTO. Because Congress did not create a private right of action by describing the structure of USPTO's officers in § 3(b) and because plaintiffs do not contest that fact in their opposition, plaintiffs' first and third causes of action must be dismissed. See Reading, 2007 WL 1267283 * 1 (D.D.C. March 2, 2007) ("The court deems the plaintiffs' failure to oppose as a concession of the motion.").

Similarly, because § 3(b) does not create any enforceable rights, plaintiffs' APA challenge in its second cause of action also must fail. Because both an enforceable right and a mechanism to remedy an alleged violation of that right are required to sue the sovereign, the possibility that the APA may provide a remedy means nothing where § 3(b) does not provide any underlying right. See Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002).

### III. PLAINTIFFS' APA CLAIM IS NOT REVIEWABLE BY THE COURT

#### A. Section 3(b) Provides No Judicially Manageable Standards Of Review

As set forth fully in the motion to dismiss, the Secretary of Commerce, upon nomination by the Director, is best suited to determine who should be appointed to act as the Director in the Director's absence or incapacitation under the language of the Act. The statute generally describes only that the Deputy Director "shall be a citizen of the United States who has a professional background and experience in patent or trademark law." There is no definition in the text or legislative history about what "professional background" or "experience" in patent or trademark law means, but "leaves these general terms to be construed" by the Secretary. Hammond, 878 F. Supp. at 1446. The absence of any factors considered to constitute professional experience or background in patent or trademark law in the legislative history supports the unreviewability of the Secretary's appointment. Simply put, no judicially manageable standards exist in the statute.

Plaintiffs contend, however, that § 3(b) provides "clear" and "very specific" requirements, informed by "multiple regulations of professionals in the United States." (Pl's Opp'n at 9-10.) Plaintiffs argue that "professional experience" within the meaning of § 3(b) requires at least some years of employment by a "corporation or law firm," "practicing exposure to patent or trademark law," receipt of pay for such work, and "at least one of the qualifications on Plaintiff's [sic] list" outlined in paragraphs 20 through 36 of their Complaint. (Id. at 13, 14.) Of course, plaintiffs provide no citation to the statute or the legislative history for support of their argument that specific requirements bound the contours of § 3(b). They cannot because neither the statute nor legislative history contain any reference to employment at a corporation or

law firm, "practicing exposure," or the long list of desired qualifications enumerated by the plaintiffs. Thus, instead of citing to the statute or legislative history, plaintiffs unilaterally infer that the Senate's approval of the Director of the USPTO in 2004 somehow "signaled . . . a minimum level of experience to satisfy the statute." (Id. at 14.) Because the Director had worked "at a law firm . . . for a fee," providing "the type of legal services subject to malpractice concerns," plaintiffs argue that Congress revealed what it had intended four years prior in passing the "Consolidated Appropriations Bill of 2000 " ("Act") amending sections of Title 35 of the United States Code relating to patent laws. Pub. L. 106-113, 113 Stat. 1536 (Nov. 29, 1999), codified at 35 U.S.C. 1, et seq. Even putting aside plaintiffs' novel theory of divining historical legislative intent by reviewing Congressional acts four years later, nothing plaintiffs provide about the confirmation of the Director or the statute suggests that Congress intended to legislate a rigid set of criterion for the appointment of an officer of the USPTO. And nothing suggests that the list enumerated by plaintiffs is the intended benchmark against which to judge such appointments. Indeed, the broad statutory language compels the conclusion that Congress intended that the appointment be left in the sound discretion of the Secretary.

Similarly, plaintiffs provide no argument to show that the structure or objectives of the Act constrain the Secretary's broad discretion to select a Deputy Director he deems is best suited for the job. Policy-laden decisions – like appointment of a Deputy Director – require a "complicated balancing of a number of factors which are peculiarly within [the Secretary's and

Director's] expertise." Chaney, 470 U.S. 821, 832. As such, they are questions uniquely answered by the Secretary and unreviewable by this court.[1]

Although plaintiffs evidently concede that the Secretary has some discretion to determine whether a person is "professional," they claim that the Secretary does not maintain the discretion to "illegally" appoint a person who lacks any "professional experience at all." (Id. at 8, 12.) Plaintiffs miss the point, however. Once it is determined that a statute lacks judicially manageable standards – as here – the action is removed from the purview of the APA completely. The APA excepts all "agency action" which is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). It does not, as plaintiffs suggest, carve out for judicial review action otherwise "committed to agency discretion by law" but that plaintiffs find grievously or wholly to depart from their interpretation of the statute. The APA does not provide for judicial review depending on a sliding scale of compliance under § 701(a)(2), but rejects review of any and all actions committed to agency discretion by law. Characterizing action pursuant to a statute that lacks judicially manageable standards as "illegal actions" does not change the result. (Pls' Opp'n at 8.)

Section 3(b) simply provides no judicially manageable standards. "[S]urely, given the possible range of" experiences and backgrounds in patent or trademark law, "an effort to reduce" the qualifications "to a few categories . . . is quite artificial and arbitrary." Public Citizen v.

---

[1] Plaintiffs also curiously contend that the Secretary should not have discretion to appoint a Deputy Director for the USPTO because the Secretary allegedly lacks an "understanding of the USPTO and its requirements." (Pls' Mot. at 11.) Of course, by statute, only the Secretary is vested with the appointment power and Congress did not limit the Secretary's discretion in appointing a Deputy Director to instances where the Secretary himself fulfilled some set of criterion for patent or trademark law expertise.

Nat'l Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 427 (D.C. Cir. 1989) (Silberman, J. concurring). "Once one recognizes that, it follows that judicial review of the application of this phrase is not available." Id. Because the appointment of the Deputy Director is an action committed to agency discretion, the Court lacks subject matter jurisdiction over plaintiffs' second cause of action and it must be dismissed.

### B. The Civil Service Reform Act Of 1978 Precludes APA Review

Plaintiffs provide no opposition to defendant's motion to dismiss setting forth the exclusivity of the CSRA scheme for personnel-related complaints and their APA cause of action must accordingly be dismissed.

## IV. PLAINTIFFS LACK STANDING TO CHALLENGE THE SECRETARY'S APPOINTMENT OF THE DEPUTY DIRECTOR

### A. Plaintiffs Lack Article III Standing

Plaintiffs fail to establish that they have suffered any particularized, "distinct and palpable injury" to themselves, rather than one "shared in substantially equal measure by all or a large class of citizens." Warth, 422 U.S. at 499, 501. Instead, plaintiffs contend that the Deputy Director has had "some influence" over the "adjudicatory process of a patent examiner's approval of the specifications and claims of [plaintiffs'] patent applications," and that the Deputy Director impacts the guidelines informing examiners' decisions, personnel decisions for hiring and firing examiners, and, through the Director, the decisions of the USPTO Board of Patent Appeals and Interferences. (Pls' Mot. at 3.) These generalized complaints about "some influence" resulting in the alleged deterioration in the quality of issued patents and trademarks, timeliness of examination of patent and trademark applications, and the overall morale of patent

and trademark examiners, are precisely the type of generalized harms that, if true, are "shared in substantially equal measure by all or a large class of citizens."[2] Warth, 422 U.S. at 501. Accordingly, they are inadequate to confer plaintiffs with standing to pursue their claims.

Plaintiffs claim that such generalized and attenuated harms may be adequate for the purposes of Article III standing under Landry and NRA. But the plaintiffs in both Landry and NRA could claim specific harm because each had appeared before improperly constituted adjudicatory boards that had issued decisions adverse to the plaintiffs. Unlike Landry and NRA, plaintiffs cannot allege that they have appeared before, and received adverse decisions from, an adjudicatory board containing the Deputy Director as a decision-maker. Although plaintiffs erroneously contend that the USPTO is an "adjudicatory board," even plaintiffs concede that any "adjudicatory" decision about a patent application is "subject to the examiner's approval," not the Deputy Director's. (Pls' Opp'n at 2.) Instead, plaintiffs advance an attenuated chain where the Deputy Director has "some influence" over the patent examiners because she allegedly (1) maintains "control of the day-to-day management of the patent examiners"; (2) exerts some influence over the hiring and firing of employees at the USPTO, "which influence the morale and performance of the patent examiners"; and (3) through the Director, maintains "some influence over the decisions" of the USPTO Board of Patent Appeals and Interferences, whose decisions are binding on patent examiners." (Id.) As set forth in prevailing D.C. Circuit law, the Deputy Director's appointment may not "be singled out in suits seeking to counter the perceived

---

[2] In fact, plaintiffs would have no standing to challenge any perceived decline in the morale of the examiners themselves.

declines" in patent protections.  Reuss v. Balles, 584 F.2d 461, 469 (D.C. Cir. 1978); see also Def's Mot. at 37-38.

The "radically attenuated" test for traceability set forth in Landry and relied upon by plaintiffs is inapposite; courts permit relaxed causation findings when the injury complained of is structural in nature.  First, plaintiffs claim no specific injury from an adverse adjudicatory decision like that extant in Landry.  Moreover, plaintiffs' claims are not of the "limited class" of structural harms described in Landry and are, instead, ordinary grievances about alleged noncompliance with a statute.  204 F.3d at 1131.  Where a harm is structural in nature – for example, an appointment that violates the Constitution – the plaintiff is exempted from showing a "direct causal link between the error and the authority's adverse decision."  Id.  Even assuming some sort of injury, plaintiffs' injury is not the structural kind meriting relaxed proof of causation.  Rather, the lengthy and attenuated chain of impact arising from policy decisions of a governmental body are, under D.C. Circuit law, inadequate to support standing.  Reuss, 584 F.2d at 469.

Similarly in NRA, the court held that a party raising constitutional defects in the composition of an adjudicatory board need not prove direct causation of injury, but merely that it "had been directly subject to the authority of the agency."  6 F.3d at 824.  Even assuming that plaintiffs had established a constitutional injury – which, significantly, they do not – plaintiffs do not raise such arguments here.  Throughout their complaint and opposition, plaintiffs never once allege that they have appeared before the Deputy Director acting in any adjudicatory

proceeding.[3]  Accordingly, plaintiffs must establish that they have suffered an actual injury in fact, that is fairly traceable to the allegedly unlawful government action, and that is redressable by the requested relief.  Plaintiffs fail on all three grounds.  As set forth in the motion to dismiss, plaintiffs have completely failed to make such a showing.

Plaintiffs' new allegations of injury fare no better.  (Pls' Opp'n at 5-8.)  Even if this Court could consider plaintiffs' new allegations about changes in continuation rules and the guidelines relating to obviousness[4], plaintiffs' standing arguments fail.  First, Tafas v. Dudas, No. 07-846, 07-1008, 2007 WL 3196683 (E.D. Va. Oct. 31, 2007), shows how litigants may attempt to challenge specific policies and regulations of the USPTO – by bringing suit to challenge those specific regulations with claims of particularized harm.  Unlike specific challenges to particular regulations, plaintiffs raise abstract and unbounded claims of harm.  But as the Supreme Court recently reiterated, "the actual-injury requirement would hardly serve the purpose . . . of preventing courts from undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies of that administration." DaimlerChrysler, 126 S.Ct. 1867-68 (emphasis in original).  Of course, plaintiffs here have not succeeded in establishing even one concrete harm for their claims.  Plaintiffs may not seek to

---

[3] And even if they had, any complaints about improper rejections of patent applications must be raised under the comprehensive scheme set forth in Title 35.

[4] Of course, plaintiffs may not raise new allegations in their opposition.  See Gray v. Am. Academy of Achievement, No. 04-626, 2005 WL 645227, *4 n. 2 ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

collaterally attack the USPTO's policies in the abstract by questioning the qualifications of the employees of the USPTO.

Second, it is clear from plaintiffs' opposition that they have not suffered specific injury from the proposed rules. As plaintiffs themselves state, they may, "at some future point in time," suffer from "unreasonable rejections of legitimate patent claims" as a result of the allegedly deficient regulations. (Pls' Opp'n at 8.) "Although the fact that harm or injury may occur in the future is not necessarily fatal to a claim of standing[,] ... [such circumstances can] lessen the concreteness of the controversy and thus mitigate against a recognition of standing." United Transp. Union v. I.C.C., 891 F.2d 908, 913 (D.C. Cir.1998) (internal quotation marks omitted). Thus, when a party alleges future injury alone, the party "must demonstrate a realistic danger of sustaining a direct injury[.]" Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). Plaintiffs have failed entirely to do so. Finally, any harms from any future-rejected patents should be addressed through the comprehensive patent law system, not by challenging the appointment of the Deputy Director. See 35 U.S.C. §§ 141, 145. Nothing permits plaintiffs collaterally to appeal rejected applications now by asserting them as injuries to attack the appointment of the Deputy Director. Any such injuries are cognizable, if at all, under the scheme provided in Title 35.

Absent Article III standing, plaintiffs have no right to bring their grievances before this forum. Because plaintiffs have failed to demonstrate by a preponderance of the evidence that the court has jurisdiction to hear their claims, each cause of action must be dismissed.

**B.     Plaintiffs Lack Prudential Standing**

Finally, plaintiffs make no mention of prudential standing, which "denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." <u>Clarke v. Sec. Indus. Ass'n</u>, 479 U.S. 388, 399 (1987). As set forth in the motion to dismiss, and not contested by plaintiffs here, plaintiffs do not fall within the zone of interests intended to be protected by § 3(b). Accordingly, plaintiffs' claims must be dismissed under Rule 12(b)(6) as well.

//

//

//

//

//

//

//

**CONCLUSION**

For the foregoing reasons, plaintiffs' claims should be dismissed.

Respectfully submitted this 23d day of November, 2007.

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                            SUSAN K. RUDY
                                            Assistant Director

| OF COUNSEL | |
|---|---|
| | /s/ Helen H. Hong |
| SHARYN DANCH | HELEN H. HONG (CA SBN 235635) |
| Associate Counsel | Trial Attorney |
| Office of General Counsel, Office of General Law | U.S. Department of Justice, Civil Division |
| United States Patent and Trademark Office | P.O. Box 883, 20 Massachusetts Ave., NW Washington, D.C.  20044 |
| 600 Dulany St, Alexandria, VA  22314 | Telephone: (202) 514-5838 |
| Telephone: (571) 272-7009 | Fax: (202) 616-8460 |
| sharyn.danch@uspto.gov | helen.hong@usdoj.gov |
| | Counsel for Defendant |
| RUSSELL W. CRAIG | |
| Deputy Chief | |
| General Litigation Division | |
| Office of the General Counsel | |
| U.S. Department of Commerce | |
| 14th & Constitution Ave., NW, Rm 5889 | |
| Washington, DC 20230 | |
| Telephone: (202) 482-1362 | |
| rcraig2@doc.gov | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 23, 2007, a true and correct copy of the foregoing Defendant's Reply in Support of Motion to Dismiss was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

                              /s/ Helen H. Hong
                              HELEN H. HONG